STATE OF NORTH CAROLINA v. NELSON VINCENT BIDGOOD

No. COA00-638

(Filed 19 June 2001)

**1. Evidence— prior crimes or acts—rape of another victim— identity—common plan or scheme**

The trial court did not commit plain error in a first-degree rape case by admitting testimony under N.C.G.S. § 8C-1, Rule 404(b) regarding defendant's alleged rape of a prior victim less than ten months before the victim in this case, because: (1) both rapes occurred around the time the victims were smoking or preparing to smoke crack cocaine; (2) defendant instructed both victims to remove their own clothing; (3) defendant threatened to stab or kill both victims if they did not cooperate; and (4) the trial court limited the jury's consideration of the testimony to the purpose of showing identity and a common plan or scheme.

**2. Rape— first-degree—dismissal of charges involving second victim—failure to declare a mistrial ex mero motu not error**

The trial court did not abuse its discretion in a first-degree murder case by failing to declare a mistrial ex mero motu under N.C.G.S. § 15A-1063(1) after dismissing the charges involving a second victim which were joined for trial with the charge involving the first victim, because: (1) defendant has not brought forward on appeal any assignment of error relating to the joinder; (2) the jury was not exposed to substantive evidence concerning the events involving the second victim; and (3) the jury was not so prejudiced by the joinder and subsequent dismissal of the charges involving the second victim as to render it impossible for the jury to fairly consider the allegations concerning the first victim.

**3. Rape— first-degree—short-form indictment—constitutional**

The trial court did not err in a first-degree rape case by failing to dismiss the short-form indictment even though it failed to allege all the essential elements of first-degree rape, because our Supreme Court has already upheld the indictment's constitutionality.

STATE v. BIDGOOD

[144 N.C. App. 267 (2001)]

### 4. Sentencing— prior record level—subsequent reversal of conviction on appeal

Defendant is entitled to be resentenced for his conviction of first-degree rape when the prior record level found by the trial court was based in part upon his conviction for uttering a forged instrument and being an habitual felon that was subsequently overturned on appeal.

Appeal by defendant from judgment entered 12 November 1999 by Judge James E. Lanning in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 April 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Christine M. Ryan, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Julie Ramseur Lewis, for defendant-appellant.*

MARTIN, Judge.

Defendant was charged with the first degree rape of Andrena Denise McClure, the first degree rape of Candy McDonald, first degree sexual offense against Ms. McDonald, and with feloniously breaking or entering Ms. McDonald's home. He entered pleas of not guilty. The State's motion to join the offenses was allowed. At the close of the State's evidence, the trial court dismissed the charges relating to Ms. McDonald. The jury returned a verdict finding defendant guilty of first degree rape in the case involving Ms. McClure. Defendant appeals from the judgment entered upon the verdict.

Briefly summarized, the State's evidence relating to the alleged attack upon Ms. McClure tended to show that Ms. McClure encountered defendant on 4 March 1997 near her home. Defendant asked Ms. McClure if she wanted to get high and she replied that she did. Defendant then followed Ms. McClure to her apartment where they smoked crack cocaine. Later that evening, Dennis Bennett, Ms. McClure's boyfriend, returned home and found defendant in the apartment with her. Bennett became angry and escorted defendant out of the home.

On the morning of 5 March 1997, defendant returned to the apartment; Ms. McClure's son, who was thirteen at the time, answered the door, and defendant asked him if Bennett was in the apartment.

Defendant then asked to see Ms. McClure. When she came to the door, defendant asked if she had a stem, which is drug paraphernalia used in smoking crack cocaine. Ms. McClure told her son to go upstairs, then she and defendant went into the kitchen to smoke defendant's cocaine. While in the kitchen, defendant asked for a knife to cut the drugs. When Ms. McClure turned away to retrieve a glass for water, defendant held the knife to her side and forced her to perform fellatio on him. Defendant, still holding the knife, then instructed Ms. McClure to undress and he had vaginal intercourse with her. Ms. McClure testified that she tried to call to her son for help but defendant said he would stab her if she made noise. Defendant left soon after, but returned five minutes later with crack; Ms. McClure let him in the apartment and they smoked the cocaine. When defendant left about twenty minutes later, Ms. McClure showered and got into bed; she also told her son that defendant had raped her. She testified that she did not call the police because she had been using drugs and feared she might lose custody of her son.

When Bennett came home from work, Ms. McClure told him what had occurred and Bennett advised her to call the police, but she refused. Nevertheless, on 6 March 1997, Bennett approached two officers at a local store and told them about the rape. The officers followed Bennett to Ms. McClure's apartment. Ms. McClure initially told police that defendant had knocked on the door of her apartment and asked for a glass of water; once in the kitchen, defendant grabbed a knife, held it to her neck and raped her. She did not tell them that she had smoked crack with defendant the night before. Ms. McClure gave the clothes she wore on the day of the attack to the Crime Scene Search Technician Tracy Collins. On 26 March 1997, Ms. McClure picked defendant out of a photographic lineup. On 2 February 1998, she went to Carolinas Medical Center and gave hair and blood samples for DNA testing; at this point she admitted to investigators that she had smoked crack with defendant on the day of the alleged rape.

Ms. McClure's son testified that on the day in question he had been smoking marijuana and playing video games. He heard a male voice say, "I should cut you." Thirty or forty minutes later, according to his testimony, he thought he heard someone call for help but thought he was merely "tripping." He also testified that he was "zoned out" from the marijuana. He eventually walked downstairs and saw defendant going to the door; defendant said, "Nothing is going on." After defendant left and Ms. McClure went upstairs, she told her son

she had been raped at knife point. Ms. McClure's son also picked defendant out of a photo lineup.

Elinous Whitlock, a trace evidence analyst with the Charlotte-Mecklenburg Crime Lab, testified that on 11 November 1997 he examined Ms. McClure's clothing and found semen in the crotch of the panties. He then forwarded the specimen to Jane Burton, Chief Criminalist of the Charlotte-Mecklenburg Crime Lab, who sent defendant's blood sample, Ms. McClure's blood sample, and the stain cut off the panties to the State Bureau of Investigation on 25 February 1998. David Freeman, a forensic micro-geneticist for the SBI, testified that DNA samples taken from the stain on the crotch of Ms. McClure's panties matched the DNA of defendant's blood sample and did not match the victim's DNA sample. Freeman testified that it was "scientifically unlikely that the stain originating from the panties would come from anyone else, other than [defendant]."

The State also offered, pursuant to G.S. § 8C-1, Rule 404(b), testimony by Sandra Tate, who testified that on 27 May 1996, she and some friends walked to another friend's apartment to smoke crack cocaine. Defendant was present and asked Ms. Tate to accompany him while he retrieved some money to pay for more crack cocaine; she agreed to do so. At a deserted area, defendant grabbed Ms. Tate, threw her to the ground and told her to remove her clothing. He threatened to kill her if she did not cooperate. After a struggle, Ms. Tate partially disrobed and defendant had vaginal intercourse with her. After completing the act, defendant ran away when a vehicle approached. Ms. Tate later identified defendant from a photographic lineup. The trial court instructed the jury that Ms. Tate's testimony was presented for the "very, very limited" purpose "of showing, if the evidence is believed, that there existed in the mind of the defendant, a plan or a scheme or a system or design involving the crimes that he's charged with—that relates to the crimes he is charged with . . . and also, for that purpose of the identity of the person who committed the crime [sic], if any, that are charged in the cases for which he is on trial."

I.

[1] Defendant first argues the trial court committed plain error by admitting testimony, in violation of Rule 403 and 404(b), regarding defendant's alleged rape of Sandra Tate. Defense counsel made a pretrial motion *in limine* to exclude evidence concerning the alleged

rape, but concedes he did not object to the introduction of the evidence at the time the testimony was offered at trial. It is well established in this State that a motion *in limine* "is insufficient to preserve for appeal the question of the admissibility of evidence if the defendant fails to further object to that evidence at the time it is offered at trial." *State v. Hayes*, 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999) (citations omitted). We thus review for plain error.

Plain error is " '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused . . . .' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *U.S. v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)). In order to prevail under a plain error analysis, the defendant must show that "(1) there was error and (2) without this error, the jury would probably have reached a different verdict." *State v. Najewicz*, 112 N.C. App. 280, 294, 436 S.E.2d 132, 141 (1993), *disc. review denied*, 335 N.C. 563, 441 S.E.2d 130 (1994).

Evidence of other crimes or acts is inadmissible for the purpose of showing the character of the accused or for showing his propensity to act in conformity with a prior act. N.C. Gen. Stat. § 8C-1, Rule 404(b). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident." *Id.* The North Carolina Supreme Court has held that Rule 404(b) is a rule of inclusion. *State v. Golphin*, 352 N.C. 364, 533 S.E.2d 168 (2000), *cert. denied*, —— U.S. 149 L. Ed. 2d 305 (2001). Indeed, North Carolina's appellate courts have been "markedly liberal in admitting evidence of similar sex offenses by a defendant for the purposes now enumerated in Rule 404(b), such as establishing the defendant's identity as the perpetrator of the crime charged." *State v. Cotton*, 318 N.C. 663, 666, 351 S.E.2d 277, 279 (1987) (citation omitted). The use of evidence under Rule 404(b) is guided by two constraints: "similarity and temporal proximity." *State v. Barnett*, 141 N.C. App. 378, 389-90, 540 S.E.2d 423, 431 (2000) (citation omitted).

> When the features of the earlier act are dissimilar from those of the offense with which the defendant is currently charged, such evidence lacks probative value. When otherwise similar offenses are distanced by significant stretches of time, commonalities become less striking, and the probative value of the

analogy attaches less to the acts than to the character of the actor.

*State v. Artis*, 325 N.C. 278, 299, 384 S.E.2d 470, 481 (1989), *vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990).

In the present case, testimony was offered by the State under Rule 404(b) regarding defendant's alleged rape of Sandra Tate who was, like the victim, a black female drug user. Ms. Tate testified that she was raped by defendant on 27 May 1996, less than ten months before Ms. McClure was raped on 5 March 1997. Both rapes occurred around the time the victims were smoking or preparing to smoke crack cocaine. In both cases defendant instructed his victims to remove their own clothing. In both cases defendant threatened to stab or kill the victims if they did not cooperate.

Following Ms. Tate's testimony, the trial court instructed the jury that Ms. Tate's testimony was presented for the "very, very limited" purpose "of showing . . . that there existed in the mind of the defendant, a plan or a scheme . . . and also, for that purpose of the identity of the person who committed the crime." Because the rape of Ms. McClure and the alleged rape of Ms. Tate were sufficiently similar and occurred less than ten months apart, we hold Ms. Tate's testimony was admissible under Rule 404(b).

Once the trial court determines evidence is properly admissible under Rule 404(b), it must still determine if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. N.C. Gen. Stat. § 8C-1, Rule 403; *State v. Everhardt*, 96 N.C. App. 1, 384 S.E.2d 562 (1989), *affirmed*, 326 N.C. 777, 392 S.E.2d 391 (1990). That determination is within the sound discretion of the trial court, whose ruling will be reversed on appeal only when it is shown that the ruling was so arbitrary that it could not have resulted from a reasoned decision. *Id.* In light of the similarities noted above, we hold the trial court did not abuse its discretion by admitting Ms. Tate's testimony and limiting the jury's consideration of it for the limited purpose of showing identity and a common plan or scheme.

## II.

[2] Defendant next assigns error to the trial court's failure to declare a mistrial *ex mero motu* after dismissing the charges involving Candy McDonald. He contends it was impossible for defendant to receive a fair trial after the jury heard Ms. McDonald's testimony and other evidence relating to the cases in which she was the alleged victim.

Pursuant to G.S. § 15A-1063(1), a judge may declare a mistrial *ex mero motu* if "[i]t is impossible for the trial to proceed in conformity with [the] law." A trial court's "power to declare a mistrial must be 'exercised with caution and only after careful consideration of all available evidence and only after making the requisite findings of fact on the basis of evidence before the Court at the time judicial inquiry is made.' " *State v. Chriscoe*, 87 N.C. App. 404, 408, 360 S.E.2d 812, 814 (1987) (citations omitted). Whether or not to declare a mistrial is a matter within the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent a gross abuse of such discretion. *State v. Lyons*, 77 N.C. App. 565, 335 S.E.2d 532 (1985).

In *State v. Aycoth*, 270 N.C. 270, 154 S.E.2d 59 (1967), a deputy sheriff testified that the defendant had been arrested "on another charge" and also that the defendant had been "indicted for murder." The trial court struck this testimony and instructed the jury not to consider it, but denied the defendant's motion for a mistrial. The Supreme Court reversed, holding that defendant should have been granted the mistrial. While acknowledging that "[o]rdinarily where the evidence is withdrawn no error is committed," the Court noted:

> In some instances because of the serious character and gravity of the incompetent evidence and the obvious difficulty in erasing it from the mind, the Court has held to the opinion that a subsequent withdrawal did not cure the error.

*Id.* at 272-73, 154 S.E.2d at 60-61 (citation omitted). The Court determined that the prejudicial effect of the deputy's testimony that Aycoth had previously been under indictment for murder, when considered with other circumstances at the trial, was of such serious prejudice that it could not be cured by the court's instruction.

In the present case, however, the charges against defendant involving allegations of crimes against Candy Lee McDonald were joined for trial with the charge involving the alleged rape of Ms. McClure. Defendant has not brought forward on appeal any assignment of error to the joinder. Ms. McDonald testified that at the time of the alleged incident she was a cocaine addict and that, due to an epileptic condition, she was unable to remember the incident nor could she remember speaking with the investigating officers. Ms. McDonald's testimony was stricken in its entirety because of her inability to recall the incident. The trial court also excluded testimony by the investigating officers with respect to the statements made by

Ms. McDonald and, at the close of the State's evidence, dismissed the charges relating to her. Thus, the jury was exposed to no substantive evidence concerning the events involving Ms. McDonald. Upon dismissing the charges involving Ms. McDonald, the trial court instructed the jury:

> . . . when we began the trial, the trial related to transactions between two alleged victims. One was Candy Lee McDonald. . . .

> Those [charges] have been taken away from your consideration. . . .

> And I'm specifically instructing you that as it relates to the testimony of Candy McDonald during this trial, that that is STRICKEN; and, that you are not to consider that testimony, at all, in your deliberations. Your deliberations will be solely related to the accusation of crime—the crime of rape committed by the defendant against Andrena Denise McClure.

> You are not to include any testimony by Ms. McDonald in making your decision or in your deliberations in any way, shape or form.

We conclude that under the circumstances of this case, defendant was not so prejudiced by the joinder and subsequent dismissal of the charges involving Ms. McDonald as to render it impossible for the jury to fairly consider the allegations concerning Ms. McClure and make a fair determination of defendant's guilt or innocence of that charge without regard to the scant evidence, subsequently withdrawn, concerning Ms. McDonald. Therefore, we hold the trial court's withdrawal of that evidence, dismissal of the McDonald charges, and subsequent instruction to the jury, was sufficient and no abuse of discretion occurred in its failure to declare a mistrial as to the charge of rape of Ms. McClure. This assignment of error is overruled.

III.

[3] Defendant alleges the trial court erred by not dismissing the indictment against him because the "short-form" indictment did not allege all the essential elements of first degree rape, thereby violating his due process rights. The indictment in the present case identified the crime charged as "First Degree Rape G.S. 14-27.2," and stated:

> THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 5th day of March 1997, in Mecklenburg

County, Nelson Vincent Bidgood did unlawfully, wilfully and felo-
niously with force and arms engage in vaginal intercourse with
Andrena Denise McClure, by force and against the victim's will.

N.C. Gen. Stat. § 15-144.1(a) provides:

> In indictments for rape it is not necessary to allege every mat-
> ter required to be proved on the trial; but in the body of the indict-
> ment, after naming the person accused, the date of the offense,
> the county in which the offense of rape was allegedly committed,
> and the averment "with force and arms," as is now usual, it is suf-
> ficient in describing rape to allege that the accused person unlaw-
> fully, willfully, and feloniously did ravish and carnally know the
> victim, naming her, by force and against her will and concluding
> as is now required by law. Any bill of indictment containing the
> averments and allegations herein named shall be good and suffi-
> cient in law as an indictment for rape in the first degree and will
> support a verdict of guilty of rape in the first degree, rape in the
> second degree, attempted rape or assault on a female.

Defendant nevertheless contends the short-form indictment vio-
lates his due process rights under the United States and North
Carolina Constitutions. This argument has been considered and
rejected by our Supreme Court in *State v. Wallace*, 351 N.C. 481, 528
S.E.2d 326, *cert. denied*, 531 U.S. 1018, 148 L. Ed. 2d 498 (2000), *reh'g
denied*, 531 U.S. 1120, 148 L. Ed. 2d 784 (2001), which held in part
that the short form indictments for first degree rape authorized by
G.S. § 15-144.1 "have been held to comport with the requirements of
the North Carolina and United States Constitutions." *Id.* at 505, 528
S.E.2d at 342 (citations omitted).

### IV.

**[4]** Finally, defendant next alleges he is entitled to be re-sentenced
because the Prior Record Level found by the trial court was based in
part upon a conviction which was subsequently overturned on
appeal. The trial court determined that defendant's Prior Record
Level for sentencing purposes was Level V, based in part upon a con-
viction for uttering a forged instrument and being an habitual felon.
However, subsequent to defendant's sentencing in the instant case,
his conviction for uttering a forged instrument was reversed on
appeal. *State v. Bidgood*, No. COA99-134, (unpublished opinion filed
21 December 1999). The reversal of this conviction would result in a
Prior Record Level of IV.

G.S. § 15A-1340.11(7) provides, in pertinent part:

A person has a prior conviction when, *on the date a criminal judgment is entered,* the person being sentenced has been previously convicted of a crime:

. . .

b. In the superior court, *regardless of whether the conviction is on appeal to the appellate division;*

N.C. Gen. Stat. § 15A-1340.11(7) (emphasis added). However, we believe, and the State does not disagree, that it would be unjust to permit an enhanced sentence to stand where it is made to appear that the Prior Record Level has been erroneously calculated due to a subsequent reversal of a conviction on appeal, and we do not believe the General Assembly intended such a result. G.S. § 15A-1442(5b) authorizes the correction of such errors:

The following constitute grounds for correction of errors by the appellate division.

. . .

(5b) Violation of Sentencing Structure.—The sentence imposed:

a. Results from an incorrect finding of the defendant's prior record level under G.S. 15A-1340.14 . . . .

Therefore, we remand this case to the trial court for entry of judgment which accurately reflects defendant's Prior Record Level.

No error; remanded for re-sentencing.

Judges THOMAS and BIGGS concur.