STATE OF NORTH CAROLINA v. PHILLIP JAMES EVERY

No. COA02-150

(Filed 15 April 2003)

**1. Indecent Liberties— telephone conversations—sexually explicit—evidence sufficient—common sense of society**

Defendant's telephone conversations with the minor victim constituted an indecent liberty with a child, and the trial court correctly denied defendant's motion to dismiss, where defendant repeatedly engaged in extremely graphic and explicit sexual conversations while he groaned, breathed heavily, told the victim that he was masturbating, and invited her to do the same. Moreover, defendant exploited a position of trust as the victim's karate instructor to overcome her hesitation.

**2. Indecent Liberties— telephone conversations—sexually explicit—constructive presence**

A defendant using a telephone to have sexually explicit conversations with a minor girl was in her constructive presence for purposes of an indecent liberties prosecution; defendants may be deemed present constructively where the use of electronic technology enables them to effectively carry out conduct that would constitute taking an indecent liberty if done in the victim's actual presence to substantially the same degree that could have been achieved in the victim's actual presence.

**3. Indecent Liberties— telephone conversations—sexually explicit—gratification of desire**

There was sufficient evidence that an indecent liberties defendant accused of having sexually explicit telephone conversations with a minor acted to arouse or gratify a sexual desire.

**4. Evidence— other misconduct—indecent liberties**

The trial court did not abuse its discretion in an indecent liberties prosecution by admitting evidence of other misconduct

where the court concluded after voir dire that the State had met its burden on the similar plan exception, issued appropriate limiting instructions, and sustained eight objections from defendant during the testimony.

**5. Trial— instructions—substantial accord with request**

The trial court did not err during an indecent liberties prosecution by not giving defendant's requested special instructions as to certain issues where the instruction as a whole presented the law fairly and accurately and in substantial accord with the requested instructions.

**6. Indecent Liberties— instructions—presence—definition**

There was no prejudice in a prosecution for taking indecent liberties with a minor from the trial court's failure to specifically define "with" and "presence" because those words are commonly understood.

**7. Indecent Liberties— instructions—presence—modern electronic technology**

The inclusion of the phrase "modern electronic technology" in the definition of constructive presence in the court's charge to the jury in an indecent liberties prosecution did not prejudice defendant because the definition was in accord with the holding of the one North Carolina case on point.

**8. Indecent Liberties— telephone conversations—constructive presence—instructions—victim calling defendant**

An instruction that defendant constructively placed himself in the victim's presence during sexually explicit telephone conversations was not improper in an indecent liberties prosecution even though the victim called the defendant. He had requested or instructed that she do so.

Judge ELMORE dissenting.

Appeal by defendant from judgment entered 7 August 2001 by Judge Lindsay R. Davis, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 21 January 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Sue Y. Little, for the State.*

*Grace, Holton, Tisdale & Clifton, by Donald K. Tisdale, Sr. and Christopher R. Clifton, for defendant-appellant.*

EAGLES, Chief Judge.

Defendant, Phillip James Every, appeals from judgment entered in Forsyth County Superior Court upon a jury verdict finding him guilty of taking indecent liberties with a child.

The State's evidence tended to establish that the victim ("E.B.") began taking karate lessons at Karate International in Winston-Salem, North Carolina, when she was twelve-years-old. Defendant, who was in his "forties" at the time, was the "main instructor" at the studio. E.B. continued taking lessons from defendant until she was fourteen-years-old, at which point E.B. began taking lessons at a more convenient studio. Although the record indicates that nothing inappropriate occurred during this time, E.B. did develop somewhat of a "crush" on defendant while he was her instructor. After E.B. transferred, defendant was no longer her instructor.

E.B. contacted defendant by phone during the summer of 1995, shortly after transferring to the new studio. During their conversation, defendant asked E.B. if she "would let him kiss [her]." When E.B. responded that she "didn't know," defendant said: "Say yes. It doesn't ever have to happen, but I just want to hear you say it." Defendant then asked E.B. if she "would ever let him touch [her] breasts." E.B. again expressed equivocation and defendant responded that "it doesn't have to happen, but I just want to hear you say yes." The conversation lasted approximately twenty to thirty minutes and ended with E.B. agreeing to call defendant back the following Wednesday.

During the evening of the following Wednesday, E.B. called defendant just as she had been instructed. Defendant said "he missed [E.B.]" because she "was a very good student, one of his favorites." Defendant asked E.B. if she had "thought about what [they] had talked about that Friday before." When E.B. responded affirmatively, the conversation turned "sexual in nature." Using very explicit language, defendant inquired into E.B.'s willingness to participate in various sexual acts with him. Defendant asked E.B. if she would let him "kiss [her] breasts." Defendant also asked E.B. if she would "stroke" his genitals. Defendant was "breathing heavily" throughout the conversation, which lasted approximately fifteen to twenty minutes. Near the end of the conversation, defendant instructed E.B. to call him back the following Wednesday.

E.B. called defendant again the following Wednesday. This time, the conversation was "more explicit." Defendant told E.B. he "wanted

to f—k" her and "lick" her genitals. When E.B. hesitated, defendant said "just let me hear you say it." Again, defendant sounded like he was "breathless" while speaking to E.B.

E.B. soon began calling defendant approximately once a week, usually on Wednesday. Each conversation was sexual in nature and became more graphic and sexually explicit as each week passed. During the course of these conversations defendant told E.B. that he wanted to "get together with [her] at some point to . . . f—k [her]" and have her "suck his c—k," making explicit reference to E.B.'s virginity when he discussed his desire to have sexual intercourse with her. Defendant also invited E.B. to "play with [her]self while [she] was talking to him because he was doing the same thing." E.B. testified that defendant was "breathless" and making "groaning noises" when he made this statement and that defendant's heavy breathing continued until he reached "orgasm." At that point the conversation ended.

Sometime during the fall of 1995, in the midst of these explicit phone conversations, both defendant and E.B. attended a karate camp near Hanging Rock. On one particular evening, E.B. was sitting with defendant and several other students around a campfire when defendant began rubbing his foot against E.B.'s foot. After "several minutes" of rubbing his foot against hers, defendant stood and walked off into the woods. However, E.B. remained by the fire. Defendant later asked E.B. "why [she] didn't follow him into the woods." E.B. continued calling defendant until shortly after her sixteenth birthday, when she stopped because the conversations "grossed [her] out."

The State also presented evidence of defendant's other crimes, wrongs or acts, pursuant to N.C.R. Evid. 404(b). "N.G.," another teenaged girl, testified that she began taking karate lessons from defendant when she was nine-years-old and continued until she was fourteen-years-old. N.G. said she stopped taking lessons in May of 1999, after defendant touched her inappropriately. According to N.G., the incident was preceded by defendant telling her that she "was a very good student, his favorite" and that she "had become a very beautiful young lady." Later, defendant approached N.G. in an isolated part of the karate studio and "asked [N.G.] if [she] would kiss him." N.G., standing with her arms crossed, said "no." Defendant then approached N.G., uncrossed her arms and "asked if he could squeeze" her breast. N.G. again responded negatively. Defendant then asked N.G. to remove her top, but ceased his advances when N.G.'s mother

entered the room. N.G. reported the incident to her mother and to police and never returned to defendant's class. The following Saturday, defendant approached N.G. at a karate tournament, put his arm around her and told her "you can be my girlfriend and we'll just keep it a secret from everybody else." N.G.'s testimony was corroborated by the testimony of her mother and the police officer who investigated her complaint.

Defendant presented no evidence and moved for dismissal at the close of the evidence. The trial court denied defendant's motion to dismiss. Defendant was convicted of taking indecent liberties with a child and sentenced to imprisonment for a term of 16 to 20 months, which was suspended in lieu of supervised probation for a period of 48 months. Defendant appeals.

I.

[1] Defendant first argues that the trial court erred by denying his motion to dismiss because the State failed to present sufficient evidence that he took indecent liberties with a child. We disagree.

We first note that a motion to dismiss in a criminal case is properly denied where the State presents substantial evidence of each essential element of the charged offense and defendant's identity as the perpetrator. *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Scott*, 356 N.C. 591, 597, 573 S.E.2d 866, 869 (2002). When reviewing the denial of a motion to dismiss, appellate courts " 'must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve.' " *Id.* (citations omitted).

Section 14-202.1 of the North Carolina General Statutes provides:

(a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:

(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or

> (2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

N.C. Gen. Stat. § 14-202.1 (1995).

In order to withstand a motion to dismiss charges brought under G.S. 14-202.1(a)(1), the State must present substantial evidence of each of the following elements:

> (1) the defendant was at least 16 years of age, (2) he was five years older than his victim, (3) he willfully took or attempted to take an indecent liberty with the victim, (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred, and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire.

*State v. Rhodes*, 321 N.C. 102, 104-05, 361 S.E.2d 578, 580 (1987).

Here, the first, second and fourth elements were established by uncontradicted direct evidence. With respect to the third element, defendant asserts two arguments: (1) that "[m]ere words" cannot constitute an indecent liberty under G.S. 14-202.1; and (2) evidence that defendant spoke to the victim over the phone is insufficient to establish that defendant was in either the actual or constructive "presence" of the child. Defendant further asserts the State failed to produce sufficient evidence of the fifth element. We address defendant's arguments below.

Defendant first contends that the utterance of "mere words," no matter how reprehensible, does not constitute the taking of an indecent liberty with a child. We disagree.

" 'Indecent liberties' are defined as 'such liberties as the common sense of society would regard as indecent and improper.' " *State v. McClees*, 108 N.C. App. 648, 653, 424 S.E.2d 687, 690 (1993) (quoting Black's Law Dictionary (6th ed.)), *disc. review denied*, 333 N.C. 465, 427 S.E.2d 626 (1993).

> The evil the legislature sought to prevent in this context was the defendant's performance of *any* immoral, improper, or indecent act in the presence of a child 'for the purpose of arousing or gratifying sexual desire.' Defendant's purpose for committing such act is the gravamen of this offense; the particular act performed is immaterial.

*State v. Hartness*, 326 N.C. 561, 567, 391 S.E.2d 177, 180 (1990) (emphasis added). Therefore, neither a completed sexual act nor an offensive touching of the victim are required to violate the statute. *State v. Hicks*, 79 N.C. App. 599, 603, 339 S.E.2d 806, 809 (1986). In fact, no physical touching of the victim at all is required in order to show the taking of an indecent liberty. *State v. Nesbitt*, 133 N.C. App. 420, 423, 515 S.E.2d 503, 506 (1999).

Activity that has been held to violate the statute includes: photographing an unclothed child in a sexually suggestive position, *see State v. Kistle*, 59 N.C. App. 724, 297 S.E.2d 626 (1982), *disc. rev. denied*, 307 N.C. 471, 298 S.E.2d 694 (1983); masturbating in front of a child, *see State v. Turman*, 52 N.C. App. 376, 278 S.E.2d 574 (1981); defendant exposing himself and placing his hand on his penis while in close proximity to a child, *see State v. Hicks*, 79 N.C. App. 599, 339 S.E.2d 806 (1986); defendant masturbating behind a glass door in his home, within the view of children at a bus stop, *see State v. Nesbitt*, 133 N.C. App. 420, 515 S.E.2d 503 (1999); and defendant secretly videotaping a child who was undressing. *See State v. McClees*, 108 N.C. App. 648, 424 S.E.2d 687 (1993).

The breadth of conduct that has been held violative of the statute indicates a recognition by our courts of "the significantly greater risk of psychological damage to an impressionable child from overt sexual acts," as well as "the enhanced power and control that adults, even strangers, may exercise over children who are outside the protection of home or school." *Hicks*, 79 N.C. App. at 603, 339 S.E.2d at 809. Not only do these decisions "demonstrate that a variety of acts may be considered indecent and may be performed to provide sexual gratification to the actor," *State v. Etheridge*, 319 N.C. 34, 49, 352 S.E.2d 673, 682 (1987), they also demonstrate the scope of the statute's protection: to "encompass more types of deviant behavior" and provide children with "broader protection" than that available under statutes proscribing other sexual acts. *Id.*

Here, defendant repeatedly engaged the victim in extremely graphic and explicit conversations that were sexual in nature. Defendant told the victim he was masturbating during these conversations and invited the victim to do the same. Defendant's conversations were punctuated with heavy breathing and "groaning," leaving little doubt in the mind of the victim as to what was transpiring on the other end of the line. Moreover, defendant exploited and abused a position of trust he had occupied with the victim, karate instructor, in order to overcome the victim's hesitancy about participating in sexu-

ally explicit conversations with him and to persuade her to continue contacting him by phone. Because a rational juror could find that the common sense of society would regard this conduct as indecent or improper, we hold this conduct constitutes an indecent liberty for purposes of N.C.G.S. 14-202.1.

[2] Defendant next contends that phone conversations alone are insufficient to establish that he was either actually or constructively in the presence of the victim. We disagree.

It is not necessary that an actual touching of the victim by defendant occur in order for the defendant to be "with" a child for purposes of taking indecent liberties under § 14-202.1(a)(1). *Nesbitt*, 133 N.C. App. at 423, 515 S.E.2d at 506. All that is required is that "at the time of the immoral, improper, or indecent liberty," the defendant must be in either the "actual or constructive 'presence' of the child." *Id.*

Our decisions provide that spatial distance between the defendant and victim at the time of the offense is not the determinative factor when evaluating whether the defendant was in the actual presence of the child. *State v. Strickland*, 77 N.C. App. 454, 456, 335 S.E.2d 74, 75 (1985). In *Strickland*, the defendant exposed himself and masturbated in front of two young boys from approximately 62 feet away. This Court rejected a requirement "that a defendant must be within a certain distance of or in close proximity to the child" to be "with" them for purposes of taking an indecent liberty. *Id.* The *Strickland* court held that because defendant was close enough to see and be seen by the children; and the children could hear defendant's invitation to imitate his activity, the defendant was "with" the children within the meaning of G.S. 14-202.1. *Id.*

In *State v. McClees*, 108 N.C. App. 648, 424 S.E.2d 687 (1993), this Court also provided that "the forces of modern electronic technology" can enable a person to "constructively place himself in the 'presence' of another." *Id.* at 654, 424 S.E.2d at 690.

In *McClees*, the defendant headmaster of a private school, asked a fifteen-year-old female student to try on basketball uniforms in order to help him decide which uniform to buy for use at the school. Defendant instructed the student to change clothes in his office while he waited outside. Without the student's knowledge, defendant had secretly placed a video camera on the shelf in his office and recorded the student while she changed clothes. Defendant argued that the

State failed to show that he took an indecent liberty "with" a child because he was not in her actual presence. This Court said:

> Certainly defendant's behavior was such as the common sense of society would regard as indecent and improper. Although the defendant was not actually located in the room with his victim, he strategically placed a camera such that she was unaware of its presence, thereby secretly filming the child as she changed clothes several times at his direction. As a result, he essentially had the same capability of viewing her in a state of undress as he would have had, were he physically present in the room. Through the forces of modern electronic technology, namely the video camcorder, one can constructively place himself in the 'presence' of another. Thus we find that defendant was 'constructively present' and thereby took immoral, improper or indecent liberties 'with' the minor victim.

*Id.* at 654, 424 S.E.2d at 690.

Here, there can be little doubt that at the time defendant spoke to the victim over the phone, he was not in her actual presence. However, by using the telephone, defendant had virtually the same capability to hear and be heard by the victim as he would have had if he were in the same room with the victim. Because this same conduct would constitute the taking of indecent liberties if defendant were in the victim's actual presence, we conclude the use of this technology, albeit arguably less than modern, renders defendant constructively present under these circumstances.

We conclude that where, as here, the use of electronic technology enables the defendant to effectively carry out conduct: (1) that would constitute the taking of an indecent liberty if done in the victim's actual presence; (2) to substantially the same degree that could have been achieved in the victim's actual presence, he may be deemed constructively present by the law for purposes of proving the taking of indecent liberties with a child. Accordingly, we hold that defendant's use of the telephone placed him in the victim's constructive presence at the time he took the indecent liberties.

[3] Defendant's final contention is that the State failed to sufficiently establish that his actions were done for the purpose of arousing or gratifying a sexual desire. We disagree.

"A defendant's purpose, being a mental attitude, is seldom provable by direct evidence and must ordinarily be proven by inference."

*State v. Campbell*, 51 N.C. App. 418, 421, 276 S.E.2d 726, 729 (1981). Indeed, whether "the action was for the purpose of arousing or gratifying sexual desire, may be inferred from the evidence of the defendant's actions." *State v. Rhodes*, 321 N.C. 102, 105, 361 S.E.2d 578, 580 (1987). Based on the evidence presented at trial, we conclude a rational juror could properly infer that defendant's conduct was for the purpose of arousing or gratifying a sexual desire.

Having concluded the State presented substantial evidence of each element of the charged offense, we hold the trial court properly denied defendant's motion to dismiss.

II.

[4] Defendant next argues that the trial court erred by admitting evidence of other misconduct pursuant to N.C.R. Evid. 404(b). Defendant contends the trial court abused its discretion by failing to exclude the evidence related to the 1999 incident involving N.G., pursuant to N.C.R. Evid. 403.

Rule 404(b) of the North Carolina Rules of Evidence provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (1995).

North Carolina's appellate courts have been "markedly liberal in admitting evidence of similar sex offenses by a defendant for the purposes now enumerated in Rule 404(b) . . . ." *State v. Cotton*, 318 N.C. 663, 666, 351 S.E.2d 277, 279 (1987). The test for determining the admissibility of such evidence is whether the incidents are "sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403." *State v. Frazier*, 344 N.C. 611, 615, 476 S.E.2d 297, 299 (1996). The exclusion of evidence under Rule 403 is a matter "within the sound discretion of the trial court, whose ruling will be reversed on appeal only when it is shown that the ruling was so arbitrary that it could not have resulted from a reasoned decision." *State v. Bidgood*, 144 N.C.

STATE v. EVERY

[157 N.C. App. 200 (2003)]

App. 267, 272, 550 S.E.2d 198, 202, *cert. denied*, 354 N.C. 222, 554 S.E.2d 647 (2001).

Here, the State proffered the evidence for the purposes of establishing *modus operandi*, common plan or scheme and the absence of mistake. The evidence tended to show that defendant followed a similar pattern of communications in order to persuade or coerce adolescent female karate students into engaging in inappropriate sexual conduct with him. In each case, defendant praised his victims' classroom performance and told them they were his "favorite" student. Defendant broached the subject of inappropriate physical contact by first suggesting that he and the victims kiss. Defendant further suggested that the victims permit him to fondle their breasts. Finally, not only did defendant express a desire to engage in a surreptitious sexual relationship with both victims, he also approached both victims during off-site karate events for the apparent purpose of facilitating sexual encounters.

Following *voir dire* of the witnesses and arguments from both counsel, the trial court concluded that the State had only "met its burden with respect to the similar plan exception," based on the "similarity to the manner of approach." The trial court issued appropriate limiting instructions both before any corroborating testimony was received and again in its charge to the jury. Finally, defendant interposed a total of eight Rule 403 objections during the testimony in question, all of which were sustained by the trial court. On this record, we cannot say as a matter of law that the trial court's decision could not have been the result of a reasoned decision. Accordingly, we conclude the trial court did not abuse its discretion.

Defendant further states that evidence of subsequent conduct "cannot constitute . . . evidence of a 'plan'" with respect to the charged offense. However, defendant fails to support this assertion with either citation to legal authority or legal argument. Accordingly, this contention is deemed abandoned. *State v. Stitt*, 147 N.C. App. 77, 84, 553 S.E.2d 703, 708 (2001); N.C.R. App. P. 28(b)(5).

## III.

[5] Defendant next argues the trial court erred by denying his request for special jury instructions and by giving an erroneous supplemental instruction. We disagree and find no prejudicial error.

At the charge conference, defendant submitted two written requests for special instructions. Defendant's first proposed instruction states in pertinent part:

> The defendant is charged with a violation of G.S. 14-202.1, i.e., Taking Indecent Liberties With Children.

> The word "with" in the connection in which it is employed in the statute indicates "in the company of: as companion of," Webster's Third new [sic] International Dictionary (Unabridged 1968), or "denoting a relation of proximity, contiguity or association." Black's, *supra.* Thus, "indecent liberties *with*" a minor implies an inherent liberty committed in the *presence of the minor.* However, Black's Law Dictionary defines "presence" as: [t]he existence of a person in a particular place at a given time particularly with reference to some act done there and then. Besides actual presence, the law recognizes *constructive presence,* which latter may be predicated of a person who, though not on the very spot, was near enough to be accounted *654 present by the law, or who was actively cooperating with another who was actually present. State v. McElees, [sic] 108 N.C. App. 648 (1993).

(Emphasis omitted). Defendant's second proposed instruction states in pertinent part:

> The defendant is charged with a violation of G.S. 14-202.1, i.e., Taking Indecent Liberties With Children.

> Although "with" as used in section 14-202.1(a)(1) has not been defined by our legislature, our courts have set its parameters. It is well settled that a physical touching of a child by the defendant is not required in order to show an indecent liberty with the child in violation of section 14-202(a)(1) (citations omitted) (lewd or lascivious act must be "upon or with the body or any part or member of the body of any child"). It is necessary, however, that the defendant, at the time of the immoral, improper, or indecent liberty, be either in the actual or constructive "presence" of the child. State v. Nesbitt, 133 N.C. App. 420, 423 (1999); State v. Hartness, 326 N.C. 561, 567 (1990).

(Emphasis omitted.)

The trial court denied defendant's request and instructed the jury in accordance with N.C.P.I. 226.85. The trial court instructed:

The Defendant has been accused of taking an indecent liberty with a child. I charge that for you to find the Defendant guilty of taking an indecent liberty with a child the State must prove three things beyond a reasonable doubt:

First, that the Defendant wilfully took an indecent liberty with a child for the purpose of arousing or gratifying sexual desire. An indecent liberty is an immoral, improper or indecent act by the defendant upon the child.

Second, the State must prove beyond a reasonable doubt that the child had not reached her sixteenth birthday at the time in question.

And third, the State must prove beyond a reasonable doubt that the Defendant was at least five years older than the child and had reached his sixteenth birthday at that time.

After retiring to deliberate, the jury asked the trial court to "define act upon the child." In response, the trial court gave the following supplemental instruction:

You have requested additional instructions with respect to the language of the instructions previously given concerning the meaning of the term "indecent liberty[.]"[]

I previously instructed you that an indecent liberty is an immoral, improper or indecent act by the Defendant upon the alleged victim. An actual touching of the victim by the Defendant is not required. However, the State is required to prove to you beyond a reasonable doubt that the act was committed within the actual or constructive presence of the victim. Constructive presence means that the Defendant has constructively placed himself in the presence of the victim by means including modern electronic technology.

Defendant first contends the trial court was required to give his proposed instructions because they were correct statements of the law and supported by the evidence.

It is well settled that "if a specifically requested jury instruction is proper and supported by the evidence, the trial court must give the instruction, at least in substance." *State v. Lynch*, 46 N.C. App. 608, 608, 265 S.E.2d 491, 492, *rev'd on other grounds*, 301 N.C. 479, 272

STATE v. EVERY

[157 N.C. App. 200 (2003)]

S.E.2d 349 (1980). However, "[t]he trial court is not required to give requested instructions verbatim, even when they correctly state the law." *State v. Williams*, 333 N.C. 719, 731, 430 S.E.2d 888, 894 (1993). Furthermore, the trial court's charge to the jury must be construed contextually. *State v. Reese*, 31 N.C. App. 575, 577, 230 S.E.2d 213, 215 (1976). "[S]egregated portions will not be held prejudicial error where the charge as a whole is free from objection." *Id.* "When the trial court gives substantially the same instructions as those requested . . . purged of irrelevant and confusing features, the court does not err in refusing to give defendant's instructions exactly as proposed." *Williams*, 333 N.C. at 731, 430 S.E.2d at 894.

Here, defendant sought special instruction with respect to the following issues: (1) that no physical touching is required to violate G.S. § 14-202.1; (2) that a defendant must be in either the actual or constructive presence of the child to violate G.S. § 14-202.1; and (3) definitions of the words "with," "presence" and "constructive presence." Although the supplemental instructions did not track the language of defendant's proposed instructions verbatim, we conclude they adequately reflected the substance of defendant's requests with respect to the first two issues. Although, the court failed to specifically define the words "with" and "presence," it did define "constructive presence." Therefore, we conclude the charge as a whole, presented the law fairly and accurately and in substantial accord with defendant's requested instructions.

[6] Moreover, even if the trial court's failure to specifically define "with" and "presence" was error, defendant suffered no prejudice. For an error in the trial court's instructions to be prejudicial error, defendant must show " 'that the jury was misled or misinformed by the charge as given, or that a different result would have been reached had the requested instruction been given.' " *State v. Wilds*, 88 N.C. App. 69, 74, 362 S.E.2d 605, 608-09 (1987), *disc. review denied*, 322 N.C. 329, 368 S.E.2d 873 (1988). A defendant fails to demonstrate prejudice where the instructions requested are for words that "are so generally used and their meaning so commonly understood as to require no further definition." *Id.* at 74, 362 S.E.2d at 609 (citation omitted).

Here, the trial court's instructions notified the jury that in addition to actual presence, a person could also be constructively present. The trial court then instructed the jury on the definition of constructive presence. In light of the instructions given, the only words left undefined by the trial court were "with" and "[actual] presence."

Since these are generally used words whose meaning is commonly understood, no further definition was needed. Therefore, defendant suffered no prejudice from the trial court's failure to give the requested instructions.

**[7]** Defendant's final contention is that he was prejudiced by the trial court's definition of "constructive presence." Defendant first asserts there was no precedential basis for inclusion of the phrase "modern electronic technology" in the definition. We disagree.

It is the general rule that where a trial court, in charging a jury, undertakes the definition of a term that the law provides no set formula for defining, "the definition given should be in substantial accord with definitions approved by [our Supreme] Court." *State v. Hammonds*, 241 N.C. 226, 232, 85 S.E.2d 133, 138 (1954). *Accord, State v. McClain*, 282 N.C. 396, 193 S.E.2d 113 (1972). Our research has yielded no North Carolina Supreme Court decision either addressing or defining "constructive presence" for purposes of taking indecent liberties with a child. On the other hand, this Court has, on one previous occasion, elaborated on the parameters of what may establish "constructive presence" in this context. In *State v. McClees*, 108 N.C. App. 648, 424 S.E.2d 687 (1993), this Court held that "[t]hrough the forces of *modern electronic technology*, namely the video camcorder, one can constructively place himself in the 'presence' of another." *Id.* at 654, 424 S.E.2d at 690 (emphasis added). Because our Supreme Court has yet to pass upon this issue, *McClees* was the only North Carolina decision on point. Accordingly, the trial court properly relied on *McClees* in framing its definition. Since the definition given by the trial court was in substantial accord with the holding of *McClees*, this argument is without merit.

**[8]** Defendant next asserts that it was improper to state in the instruction "that the defendant has constructively placed himself in the presence of the victim," because the "evidence reveal[ed] that the victim called the defendant, not vice versa." We disagree.

"[W]hen a charge, as a whole, presents the law accurately, fairly, and clearly to the jury, reversible error does not occur." *State v. Nesbitt*, 133 N.C. App. 420, 426, 515 S.E.2d 503, 507 (1999). After reviewing the entire jury charge, in context, we conclude the trial court presented the law to the jury fairly and accurately. Furthermore, there is ample evidence in the record indicating that after the first call, defendant, victim's former karate instructor, either requested or instructed the victim to call him the next week on

Wednesday, which she dutifully did for a number of weeks. Therefore, we find this argument without merit.

Accordingly, we hold defendant received a fair trial, free from prejudicial error.

No error.

Judge McCULLOUGH concurs.

Judge ELMORE dissents.

ELMORE, Judge dissenting.

Because I do not agree with the majority's holding that defendant placed himself in the constructive presence of the victim by participating in telephone conversations of a sexual nature with her, I respectfully dissent.

In order to withstand a motion to dismiss charges brought under N.C. Gen. Stat. § 14-202.1(a)(1), the State must present substantial evidence that, *inter alia*, the defendant "willfully took or attempted to take an indecent liberty *with* the victim." *Rhodes*, 321 N.C. at 104, 361 S.E.2d at 580 (emphasis added). As the majority correctly notes, it is not necessary for physical contact to occur in order for the defendant to be "with" a child for purposes of taking indecent liberties under the statute. *Nesbitt*, 133 N.C. App. at 423, 515 S.E.2d 506. Rather, at the time of the indecent liberty, the defendant must be in either the "actual or constructive 'presence' of the child." *Id.*

Since there are no North Carolina Supreme Court decisions defining "constructive presence" for the purpose of taking indecent liberties with a child, the majority correctly identifies *State v. McClees*, 108 N.C. App. 648, 424 S.E.2d 687 (1993), this Court's lone previous attempt to define "constructive presence" in an "indecent liberties" context, as our touchstone in determining whether defendant's conduct placed him in the constructive presence of the victim in the case at bar. However, unlike the majority, I find that the facts of the instant case are clearly distinguishable from *McClees* and compel a different outcome.

The *McClees* Court reasoned that by hiding a video camera in his office "such that [the victim] was unaware of its presence" and filming her changing clothes *at his invitation* but outside of

his presence, the defendant "essentially had the same capability of *viewing her in a state of undress* as he would have had, were he physically present in the room." *McClees*, 108 N.C. App. at 654, 424 S.E.2d at 690 (emphasis added). The *McClees* Court stressed that the victim was not aware of the camera's presence, and certainly was unaware that she was being *filmed* by defendant. The defendant's use of video recording equipment in *McClees* supported an inference that he planned to view the tape repeatedly as a means of arousing or gratifying sexual desire. This is in stark contrast with the case at bar, where the *victim*, over a period of several weeks, initiated each of the telephone calls at issue and willingly engaged in sexually explicit conversation with defendant, knowing all the while of the presence and identity of the party on the other end of the line. Further, there was no evidence that defendant recorded any of these telephone conversations. The conduct at issue in *McClees* involved secretly videotaping the unaware victim in a state of undress and was accomplished solely on the defendant's initiative and through an elaborate ruse. By contrast, defendant's conduct in the instant case consisted of answering the victim's telephone calls and engaging her in sexually explicit conversation, with no recording and no deception on his part.

The majority cites the *McClees* Court's holding that "[t]hrough the forces of modern electronic technology, namely the video camcorder, one can constructively place himself in the 'presence' of another[,]" *Id.*, to support its own holding that defendant's telephone conversations with the victim "renders defendant constructively present under these circumstances." For the reasons stated above, I believe that "these circumstances" are readily distinguishable from those considered by the *McClees* Court. Further, I would limit the "forces of modern technology" sufficient to confer constructive presence to the single "modern technology" considered by the *McClees* Court, "namely[,] the video camcorder."

Because I do not believe the State has presented sufficient evidence that defendant was in the victim's constructive presence while engaging in these admittedly reprehensible telephone conversations with her, I would remand to the trial court for entry of an order granting defendant's motion to dismiss the charges against him.