ELMORE, Judge.
The testimonial evidence was that Benjamin Fort (Fort) gave a woman, later identified as Kimberly Long (Long), a ride in his car to the Pisgah View Apartments. As Fort waited for her to return to the car, the assailant approached the vehicle and forced Fort out of the vehicle after firing a shot into the vehicle. Fort testified at trial that the assailant then pushed him up against a wall and went through his pockets. The assailant then took Fort'swallet and cell phone and let him retrieve the rest of his things and leave.
Long testified at trial that when Fort dropped her off, she asked him to wait because she wanted him to take her somewhere else. She stated that from inside the apartment she heard a sound like a gunshot. She ran to the front door and saw the man she knew as "Sal," who is the defendant, and Fort. Long testified that the men entered her apartment and that she witnessed the robbery there inside. She stated that they argued loudly, and that the defendant demanded she pay him money she owed him or he would shoot Fort. Long did not remember Fort saying anything. She ran outside for help. She was outside talking to a neighbor when she saw Fort exit the apartment, go to his car, and leave. Long testified that she returned to her apartment to look for defendant, and found him outside in a back alley, crouched behind a staircase with Fort's wallet and cell phone.
Fort turned over a copy of his cell phone bill to Detective Eric Lauffer. During the time after he had been robbed, calls were made on Fort's cell phone to Tonya Jackson and to the house where defendant's mother worked. Jackson testified that defendant had called her on that same day. Defendant's mother told Detective Lauffer that she had not received a call.
Defendant's mother testified at trial that he had slept on thecouch at her house the night of the robbery. She testified that she heard the defendant talking to his sister at about 2:00 a.m. and that he was asleep on the couch when she left for work the next morning.
After one mistrial, at the beginning of his second trial, defendant requested a new attorney. The trial court determined that counsel was prepared to represent defendant and to bring the case to trial, and denied the request. Defendant stated that he was so sure that counsel would be insufficient that he would rather represent himself. His counsel was relieved of her duties but appointed as standby counsel to advise the defendant. The State requested that defendant be advised of the possible penalties for the felonies with which he was charged, and the trial court advised defendant that he faced a possible sentence of 425 months on all charges. Defendant proceeded pro se, and was found guilty by a jury of robbery with a dangerous weapon, second-degree kidnapping, and discharging a weapon into occupied property.
I.
Defendant first assigns error to the trial court's decision to allow defendant to proceed pro se, arguing the trial court did not properly establish the validity of his waiver of counsel as required by N.C. Gen. Stat. § 15A-1242 and the Federal and State Constitutions. Where the defendant proceeds on a waiver of counsel, N.C. Gen. Stat. § 15A-1242 requires a thorough examination of the waiver. State v. Hargrove, 104 N.C. App. 194, 198, 408 S.E.2d 757, 760, disc. review denied, 330 N.C. 444, 412 S.E.2d 79 (1991). That section provides:
A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:
(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
(2) Understands and appreciates the consequences of this decision; and
(3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.
N.C. Gen. Stat. § 15A-1242 (2003).
The right of a defendant to be represented by counsel is well-established. Argersinger v. Hamlin, 407 U.S. 25, 32 L. Ed. 2d 530 (1972). A defendant also has the right to proceed without counsel if he so desires, but a waiver of counsel must be knowing and voluntary, and the record must show that the defendant is literate and competent. Faretta v. California, 422 U.S. 806, 45 L. Ed. 2d 562 (1975); State v. Thacker, 301 N.C. 348, 271 S.E.2d 252 (1980). When a defendant indicates his desire to proceed to trialwithout counsel, the trial judge must conduct an inquiry to ascertain that the defendant's waiver is given with full understanding of his rights. N.C. Gen. Stat. § 15A-1242 (2003). Inquiry under that section is necessary whenever a defendant either implicitly or explicitly indicates a desire to waive the right to counsel. State v. Bullock, 316 N.C. 180, 340 S.E.2d 106 (1986) (ordering a new trial when the defendant, a magistrate, was not apprised of the consequences of waiving right to counsel). But a defendant must indicate that he wants to represent himself, and not just express general anxiety over his counsel or the pace of the trial, in order to trigger an inquiry under the statute. State v. Gerald, 304 N.C. 511, 284 S.E.2d 312 (1981). The defendant in the case at bar did so.
A defendant's waiver of counsel is not knowing, intelligent, or voluntary as required under N.C. Gen. Stat. § 15A-1242, when the trial court fails to ascertain whether defendant knows the consequences of his decision, the nature of charges, and the range of permissible punishments. State v. Evans, 153 N.C. App. 313, 569 S.E.2d 673 (2002).
In the case of State v. Stanback, 137 N.C. App. 583, 529 S.E.2d 229 (2000), this Court granted a new trial to the defendant, holding that it was plain error to allow defendant to proceed pro se without first inquiring as to whether defendant "comprehend[ed]the nature of the charges and proceedings and the range of permissible punishments[,]" pursuant to N.C. Gen. Stat. § 15A-1242(3) (2003). In that case at trial, defendant told the trial court, "I'd like to represent myself and go ahead with the trial." Stanback, 137 N.C. App. at 584, 529 S.E.2d at 230. After the trial court cautioned defendant about the hazards of representing himself, the trial court took a recess to allow defendant to consult with his appointed counsel. After the recess, defendant's counsel informed the trial court defendant was adamant about wanting to represent himself. When the trial court asked defendant if he wanted to represent himself, defendant responded, "Yes, I do." Id. The trial court then previously appointed defendant's appointed counsel as defendant's standby counsel, and, without further inquiry, brought defendant's case to trial. This was held to be plain error by this Court. Stanback, 137 N.C. App. at 583, 529 S.E.2d at 229.
Based upon our reasoning in Stanback, for the inquiry to have the effect anticipated by the statute, it must happen before the defendant commits himself to proceeding pro se. What distinguishes the case at bar is that the defendant was told of the possible sentence he would receive before the jury re-entered the courtroom. He was told only upon the urging of the prosecutor, and after he requested to the trial court that he proceed pro se, and the trialcourt had already allowed him to do so. There was nothing in the first trial transcript to suggest that, even though the defendant had already been through a mistrial once, he was aware of how much time he was facing.
Nevertheless, defendant still had the option of changing his mind, and proceeding with counsel before the jury re-entered the courtroom. He had not yet begun his own representation, and had been advised in time of the sentence he faced. In an ideal inquiry, the trial court would apprise the defendant of his possible sentence before he is asked to waive his right to counsel. However, because the defendant was advised of his possible sentence while he still had time to change his mind, the waiver was effective, and the defendant was not deprived of his rights.
We hold that the trial court did not err.
II.
Defendant next assigns error to the trial court's decision to allow two witnesses to testify to prior bad acts of the defendant, arguing that their testimony was minimally relevant and highly prejudicial, thereby violating the North Carolina Rules of Evidence and denying defendant's constitutional rights. Neither piece of testimony was stricken from the record and there was no curative instruction to the jury.
Rule of Evidence 404(b) states: (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. Admissible evidence may include evidence of an offense committed by a juvenile if it would have been a Class A, B1, B2, C, D, or E felony if committed by an adult.
N.C.R. Evid. 404(b) (2004).
This rule is a general rule of inclusion of evidence, subject to an exception when the only probative value of the evidence is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged. State v. West, 103 N.C. App. 1, 9, 404 S.E.2d 191, 197 (1991). "Once a trial court determines that the evidence is properly admissible under Rule 404(b), it must still determine if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice" under Rule 403. State v. Bidgood, 144 N.C. App. 267, 272, 550 S.E.2d 198, 202 (2001) (citations omitted).
At trial, Kimberly Long, as a witness for the State, testified concerning the identity of the assailant. A citation had been found in the apartment with another man's name on it, and defendant cross-examined Long about her ability to identify that man, Robert Wingate, and the defendant, whom she knew as "Sal." Longtestified:
A I know who Robert Wingate is, but I did not - I could not picture Robert Wingate until I was showed a lineup, and I was shown a lineup of - photo lineup in which you were in there - Robert Wingate might have been in the same lineup, I'm not even sure, but I saw a lineup with both you and Robert Wingate in them.... I wouldn't have known his last name, but I knew him by face.
Q And that's the same you don't know Sal's last name or real name either; do you?
A No, I don't know Sal's last name, but Robert Wingate never held a gun to me and raped me.
MR. HEAD: Objection to that, too, Your Honor.
THE COURT: Overruled.
In this instance, while the subject matter had great potential to be prejudicial, the witness was also being asked how she could identify the defendant, or how she knew him any better than Robert Wingate. Her testimony was relevant to that issue.
The challenged testimony of Detective Lauffer seems to suggest that defendant had a record and had sold crack. Detective Lauffer testified that he got information and a photo from defendant's record, and that Long had told him that she knew the defendant because she had purchased crack cocaine from him.
Defendant did not object to Detective Lauffer's testimony, so we review it for plain error. State v. Bishop, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997). Under the plain error standard ofreview, defendant has the burden of showing: "(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." Id.
These questions and responses dealt with the process by which Detective Lauffer tracked down the defendant. Detective Lauffer was not testifying about defendant's prior activities as such. We hold that the defendant was not prejudiced by the testimony, but received a fair trial.
III.
Defendant also assigns error to the trial court's denial of the State's challenge for cause of Juror Gaston Seal, who defendant argues was not a resident of Buncombe County, and therefore was not qualified to serve on the jury pursuant to N.C. Gen. Stat. §§ 9-3 and 15A-1212.
The rule is succinctly stated in State v. Chavis, 24 N.C. App. 148, 175, 210 S.E. 2d 555, 573 (1974), cert. denied 287 N.C. 261, 214 S.E. 2d 434 (1975), cert. denied 423 U.S. 1080 (1976). "[I]n order for a defendant to preserve his exception to the court's denial of a challenge for cause, he must (1) excuse the challenged juror with a peremptory challenge, (2) exhaust his peremptory challenges before the panel is completed, and (3) thereafter seek, and be denied, peremptory challenge to an additional juror."
State v. Spencer, 37 N.C. App. 739, 740-41, 246 S.E.2d 837, 838(1978).
Defendant argues on appeal that this rule only applies when defendant is appealing defendant's own challenge and not the State's, which defendant characterizes as "unwaivable structural error." But the rule as quoted above clearly applies to "a challenge" and not just his challenge. Because defendant had the opportunity to use a peremptory challenge and did not, nor did he object, he has not preserved the issue for appeal.
IV.
Lastly, Defendant argues that the trial court erred in denying his motions to dismiss because the evidence was insufficient as a matter of law to establish defendant as the perpetrator of the charged offenses.
"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Scott, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002).
Based on the evidence of the phone record and the testimonial evidence placing defendant at the scene, there was substantial evidence of the crime charged and that defendant was the perpetrator. We uphold the decision of the trial court. No error.
Judges McGEE and McCULLOUGH concur.
Report per Rule 30(e).