STATE v. WADE AYCOTH AND JOHN SHADRICK, DEFENDANTS.

(Filed 3 May, 1967.)

**1. Criminal Law § 34—**

The general rule is that in a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense.

**2. Criminal Law § 91—**

Whether the admission of incompetent evidence, including an unrespon-sive answer of a witness containing incompetent matter, may be cured by the withdrawal of such evidence by the court with instruction to the jury not to consider it, depends upon the nature of the evidence and the cir-cumstances of each particular case.

**3. Same; Criminal Law § 34—**

In the cross-examination of a codefendant in this prosecution of defend-ants for armed robbery, the codefendant made an unresponsive answer disclosing that defendant had been indicted for murder. *Held:* Under the circumstances of the case withdrawal of the unresponsive answer by the court and the court's instruction to the jury not to consider it, were not sufficient to cure its prejudicial effect, and a new trial must be awarded.

APPEAL by defendant Aycoth from *McLaughlin, J.,* October 31, 1966 Session of UNION.

Criminal prosecution on a bill of indictment charging Wade Aycoth and John Shadrick with the armed robbery, as defined in G.S. 14-87, of Mrs. Keith Stevenson.

Evidence offered by the State tends to show Mrs. Stevenson, an employee, was in charge of Outen's Grocery on October 25, 1966, about 1:15 p.m., when Aycoth entered the store, armed with a pistol, and demanded and received the money in the cash register, approximately $100.00; that Shadrick was riding in the car, as a passenger, when Aycoth drove to and from Outen's Grocery; and that Aycoth and Shadrick were together when arrested in Union County about 9:00 p.m. the same day.

Evidence offered by Shadrick, consisting of his own testimony, tends to show he and Aycoth got together in Mecklenburg County about 3:00 p.m. and did not leave for Union County until 8:00 p.m.

Aycoth did not testify or offer evidence.

Each defendant was represented by separate court-appointed counsel; Aycoth by R. Roy Hawfield, Esq., and Shadrick by Robert Huffman, Esq.

As to each defendant, the jury returned a verdict of "guilty of armed robbery."

Judgment as to Shadrick is not in the record before us.

As to Aycoth, the court pronounced judgment that defendant "be confined in the State Prison for not less then eighteen (18) years nor more than twenty-five (25) years."

Aycoth excepted and appealed.

*Attorney General Bruton and Staff Attorney White for the State.*
*R. Roy Hawfield for defendant appellant.*

BOBBITT, J. There was plenary evidence to withstand Aycoth's motion for judgment as in case of nonsuit and to support the verdict. The only serious question presented is whether Aycoth was materially prejudiced by the incident set forth below.

During the cross-examination of Deputy Sheriff Frank Fowler, a witness for the State, by counsel for Shadrick, the following occurred:

"Q. Did you make any identification of the ownership of the automobile, do you know of your own knowledge who owns it? (The reference is to the automobile in possession of Aycoth and Shadrick at the time of their arrest.)

"A. Yes, sir, in my opinion I know who owns it.

"Q.  Well, do you know?

"OBJECTION by the State.

"COURT:  Well, the test is do you know who owns the automobile?

"A.  Wade Aycoth at an earlier date said it was his car when we arrested him on another charge in his yard. His wife asked me to go search the car and see if I could find some articles that was left in the car setting in the yard when he was indicted for murder.

"OBJECTION by Mr. Huffman.

"MR. HAWFIELD:  Objection and move to strike.

"MOTION ALLOWED.

"COURT:  Don't consider what he said about what his wife said, or when he was indicted for murder. Don't consider that, ladies and gentlemen of the jury."

Fowler was the last witness for the State. At the conclusion of his testimony, the State rested and each defendant moved for judgment as in case of nonsuit. During the consideration of these motions, in the absence of the jury, counsel for Aycoth also moved for a mistrial on the ground the unresponsive statement of Fowler "purposely or inadvertently materially prejudiced the rights" of Aycoth to such extent that its prejudicial effect could not be removed by an instruction such as that given by the court. His motion for a mistrial was denied and Aycoth excepted.

"The general rule is that in a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense." *S. v. McClain,* 240 N.C. 171, 81 S.E. 2d 364, and cases and texts cited; *S. v. Norkett,* 269 N.C. 679, 153 S.E. 2d 362; Stansbury, North Carolina Evidence, Second Edition, § 91.

The unresponsive statement of Fowler informed the jury that Aycoth had been indicted for murder. The court allowed the motion to strike and instructed the jury as shown by the quoted excerpt from the record.

"In appraising the effect of incompetent evidence once admitted and afterwards withdrawn, the Court will look to the nature of the evidence and its probable influence upon the minds of the jury in reaching a verdict. In some instances because of the serious character and gravity of the incompetent evidence and the obvious difficulty in erasing it from the mind, the Court has held to the opinion that a subsequent withdrawal did not cure the error. But in other cases the trial courts have freely exercised the privilege, which is not only a matter of custom but almost a matter of necessity in the supervision of a lengthy trial: Ordinarily where the evidence is

withdrawn no error is committed." *S. v. Strickland,* 229 N.C. 201, 207, 49 S.E. 2d 469, 473; *S. v. Green,* 251 N.C. 40, 46, 110 S.E. 2d 609, 613, and cases cited. This is also the rule when unresponsive answers of a witness include incompetent prejudicial statements and the court on motion or *ex mero motu* instructs the jury they are not to consider such testimony. *S. v. Brown,* 266 N.C. 55, 145 S.E. 2d 297. Whether the prejudicial effect of such incompetent statements should be deemed cured by such instructions depends upon the nature of the evidence and the circumstances of the particular case. *S. v. Aldridge,* 254 N.C. 297, 118 S.E. 2d 766.

The trial judge was of opinion the trial could proceed without material prejudice to defendant. We are inclined to the opposite view. Upon the record before us, we apprehend the court's instruction did not remove from the minds of the jurors the prejudicial effect of the knowledge they had acquired from Fowler's testimony that Aycoth had been or was under indictment for murder.

Subsequent incidents tend to emphasize rather than dispel the prejudicial effect of Fowler's testimony. Shadrick testified the arresting officer answered his inquiry as to why he was being arrested by saying, "Running around with Aycoth is enough." Too, the solicitor, in cross-examining Shadrick, asked (1) whether Shadrick had become acquainted with Aycoth in prison, and (2) whether Shadrick knew Aycoth while Shadrick was in prison. Although Shadrick gave a negative answer to each of these questions, the questions themselves clearly imply that Aycoth had been in prison.

Being of the opinion the incompetent evidence to the effect Aycoth had been or was under indictment for murder was of such serious nature that its prejudicial effect was not erased by the court's quoted instruction, we are constrained to hold that Aycoth's motion for a mistrial should have been granted. For failure of the court to grant such motion, Aycoth is entitled to and is awarded a new trial.

New trial.