STATE OF NORTH CAROLINA v. SAMUEL NICK MOORE

No. 29

(Filed 6 January 1970)

**1. Criminal Law § 178—  homicide — motion  for  nonsuit — decision on former appeal — law of the case**

Defendant's motion for nonsuit in his second trial for first degree murder must be denied where the Supreme Court determined on appeal from defendant's first trial for the same crime that his motion for nonsuit was properly denied and the evidence at the second trial did not differ materially from that of the first trial.

**2. Criminal Law § 34;  Homicide § 15—  prior conduct and attitude toward deceased**

In this prosecution of defendant for first degree murder of his wife, the trial court properly admitted testimony tending to show defendant's conduct and attitude toward his wife on numerous occasions prior to her death.

**3. Criminal Law §§ 50, 65, 71;  Homicide § 15—  testimony that person was angry, unconscious, or nervous**

In this prosecution of defendant for first degree murder of his wife, the trial court did not err in the admission of testimony (1) that failure of defendant's wife to say anything to defendant on an occasion about three months before her death "made him mad," and that he kept hitting her until she fell to the floor "unconscious," (2) that a witness saw defendant at a county fair standing about twenty-five feet from his wife, who was lying "unconscious" on the ground, her blouse torn and her body saturated with water from the waist down, and (3) that defendant appeared "nervous, like he was emotionally upset" when he brought his child to the home of his mother-in-law on the morning of the homicide, instantaneous conclusions of the mind as to the appearance, condition or mental or physical state of persons being matters of fact which are admissible in evidence.

**4. Homicide §§ 17, 18—  evidence of ill will toward member of deceased's family**

In this prosecution of defendant for first degree murder of his wife, the trial court did not err in the admission of testimony by defendant's mother-in-law that when she went to defendant's trailer to see about her daughter shortly after defendant had beaten her a few months before the homicide occurred, defendant told her it was none of her business, that she was nothing and deceased was nothing, and that she should get out of the trailer, defendant's statements being directly related to defendant's abuse of his wife, and evidence of defendant's ill will toward a member of the family of deceased being admissible to show malice, premeditation or general state of mind.

**5. Criminal Law § 43;  Homicide § 20—  photographs of body of deceased and place where found**

In this prosecution of defendant for first degree murder of his wife, the trial court did not err in the admission of properly identified photographs

STATE v. MOORE

showing the body of deceased and its location in defendant's trailer for the purpose of illustrating the testimony of witnesses who saw the body before it was moved.

6. **Criminal Law § 128— mistrial — unsolicited testimony by State's witness — other crimes — prejudice removed by court's instructions**

In this prosecution of defendant for first degree murder of his wife, the trial court did not err in failing, on its own motion, to declare a mistrial when, in response to questions by the solicitor as to whether defendant had made a statement to two State's witnesses concerning what he would do to his wife if she left him, one witness stated on four occasions and another on one occasion that defendant said that "he had killed one person," where the trial judge on each occasion struck the witness' unresponsive answer from the record and instructed the jury to disregard the answer and not consider it for any purpose, the statement containing no suggestion that the homicide was the result of a criminal act or that defendant had been prosecuted for it, there being no subsequent events which tended to emphasize such inconclusive testimony, and defense counsel having made no motion for mistrial.

7. **Criminal Law § 128— mistrial on court's own motion — failure of defendant to move for mistrial**

In this prosecution for the capital offense of first degree murder wherein the trial court, upon objections by defendant, struck unresponsive answers given by two State's witnesses from the record and instructed the jury not to consider them for any purpose, and defendant made no motion for mistrial but elected to proceed with the trial and take his chances with the jury then empaneled, defendant may not successfully contend that the court, on its own motion, should have declared a mistrial.

8. **Criminal Law § 128— mistrial in capital case — consent of accused**

It is only in cases of necessity in attaining the ends of justice that a mistrial may be ordered in a capital case without the consent of the accused.

MOORE, J., did not participate in the consideration or decision of this case.

APPEAL by defendant under G.S. 7A-27(a) from *Fountain, J.,* May 1969 Session of BEAUFORT.

Defendant's wife, Joanne Woolard Moore, was killed on 7 March 1968 by the discharge from a shotgun in his hands, and he was indicted for her murder. At the August 1968 Session, the jury convicted defendant of murder in the first degree and recommended a sentence of life imprisonment. From judgment pronounced upon that verdict he appealed, and we ordered a new trial for errors in the judge's charge. *State v. Moore,* 275 N.C. 198, 166 S.E. 2d 652. Defendant was retried at the May 1969 Session. Again the verdict was guilty of murder in the first degree with the recommendation that the punishment be imprisonment for life. Now, for the second time,

defendant appeals from a mandatory life sentence. He assigns as error, *inter alia,* the overruling of his motion for nonsuit, the admission of certain evidence, and the failure of the court, *ex mero motu,* to declare a mistrial because of unsolicited statements made by two State's witnesses.

*Robert Morgan, Attorney General, and Ralph Moody, Deputy Attorney General, for the State.*

*Leroy Scott and Carter & Ross for defendant appellant.*

SHARP, J.

The evidence introduced at the first trial is summarized in our former opinion. *State v. Moore,* 275 N.C. 198, 201-205, 166 S.E. 2d 652, 654-657. At the second trial, defendant added to his testimony some details which he had formerly omitted, but the evidence for both State and defendant was substantially the same as that previously offered. Defendant concedes that his wife was killed by a blast from a shotgun he was carrying. It is his contention that the gun was discharged accidentally.

In brief summary, the State's evidence tended to show: For approximately three and one-half years prior to her death, on various occasions, defendant had beaten his wife into unconsciousness, intentionally inflicted personal injuries upon her, and had otherwise abused her. He had threatened to kill her if she ever left him. At the time of her death her face was still bruised and swollen from a beating he had given her several days earlier. On the morning of her death he telephoned his mother-in-law, Mrs. Woolard, and told her to come over and get the baby; that he was going to kill himself and Joanne. About twenty minutes later, defendant arrived at Mrs. Woolard's home with the baby. Although the day was cold and windy, the child was without wraps. Defendant's hands were trembling, and he appeared nervous and upset. He told Mrs. Woolard that he was going back to talk to Joanne; that every time he tried to talk to her the baby cried. He left, and Mrs. Woolard tried to telephone her daughter. Receiving no answer, she went to the trailer. There she found her daughter's body lying in a pool of blood. The right side of her face and head had been blown away.

Defendant's evidence tended to show: He had never abused or injured his wife. On 7 March 1968 her face was bruised and swollen, but these injuries had occurred when she fell out of bed the preceding Sunday. Before breakfast, on the morning of her death, she had told him that she had talked to a lawyer; that her mother wanted

her to divorce him and had taken pictures of her face to be used as evidence; that she was supposed to tell her mother that day what she intended to do about the divorce, but she did not then know what her decision would be. Defendant told her to make up her mind and let him know, that in the meantime he would be at his mother's. Joanne, who was then preparing breakfast, asked him whether he wanted sausage or bacon, and he specified sausage. He then collected some clothes, his rifle and shotgun, and started with them to his truck. On the way out he shifted the gun and rifle from one arm to the other in order to reach for a pack of cigarettes on a table, and the gun — which he did not know was loaded — accidentally discharged. When he saw Joanne lying on the floor "with her head half blown off," he called Mrs. Woolard to come for the baby; he did not tell her that he had shot Joanne. When Mrs. Woolard did not come he carried the child to her home. She asked him if he had beaten Joanne, and he said NO. When she asked him where he was going he said, "Well, I guess I'm going to the penitentiary, if I don't kill myself." He then borrowed some money from his brother and drove to West Virginia, but the next day returned to Beaufort County and surrendered to the police.

[1] The decision on the first appeal was that defendant's motion for nonsuit was properly overruled. Since the second-trial evidence did not differ materially from that of the first trial, the same ruling upon the motion for nonsuit was required. *State v. Peterson,* 226 N.C. 770, 40 S.E. 2d 362.

[2] Thirteen of defendant's assignments of error relate to the admission of testimony tending to show defendant's conduct and attitude toward his wife on numerous occasions prior to her death. The competency of this evidence was established by our opinion in the former appeal, and no further discussion of it is required. *State v. Moore, supra* at 206-207; *State v. Kincaid,* 183 N.C. 709, 110 S.E. 612; *State v. Turner,* 143 N.C. 641, 57 S.E. 158.

[3] Assignments of error 1, 19-22, 29, and 30 are directed (1) to Clarence Bullock's testimony that Joanne's failure to say anything to defendant on an occasion about three months before her death *made him mad,* and that he kept hitting her until she fell to the floor *unconscious;* (2) to Patrolman Boykin's statement that in October 1965 at the Beaufort County Fair he had seen defendant standing about twenty-five feet from Joanne, who was lying *unconscious* on the ground, her blouse torn and her body saturated with water from the waist down; and (3) to Mrs. Woolard's statement that defendant appeared *nervous, like he was emotionally upset,* when he brought

his child to her home on the morning of the homicide. All this evidence was competent. The rule is stated in *State v. Leak*, 156 N.C. 643, 647, 72 S.E. 567, 568:

"The instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time, are, legally speaking, matters of fact, and are admissible in evidence.

"A witness may say that a man appeared intoxicated or angry or pleased. In one sense the statement is a conclusion or opinion of the witness, but in a legal sense, and within the meaning of the phrase, 'matter of fact,' as used in the law of evidence, it is not opinion, but is one of the class of things above mentioned, which are better regarded as matters of fact. The appearance of a man, his actions, his expression, his conversation — a series of things — go to make up the mental picture in the mind of the witness which leads to a knowledge which is as certain, and as much a matter of fact, as if he testified, from evidence presented to his eyes, to the color of a person's hair, or any other physical fact of like nature. . . ." *Accord, State v. Brown*, 204 N.C. 392, 168 S.E. 532; *Moore v. Insurance Co.*, 192 N.C. 580, 135 S.E. 456; *State v. Walton*, 186 N.C. 485, 119 S.E. 886; Stansbury, N. C. Evidence § 129 (2d ed., 1963); 32A C. J. S. *Evidence* §§ 546(12), (23); 31 Am. Jur. 2d *Expert and Opinion Evidence* §§ 96, 162 (1967).

**[4]** Assignments of error 3 and 4 relate to Mrs. Woolard's testimony that on the night of 23 December 1967 she went to defendant's trailer and found her daughter, Joanne, in bed, her face and arms swollen and bruised; that defendant told her it was none of her g - - d - - - business and she didn't have any g - - d - - - business being there; that she was nothing and Joanne was nothing; and that she should get out of the g - - d - - - trailer. Defendant contends that these statements, made "on another occasion," were unrelated to the case and prejudicial to him. This contention will not withstand scrutiny. The statements (according to the State's evidence) were made by defendant to his mother-in-law, who had come to the trailer to see about her daughter shortly after defendant had beaten her. The statements were not unrelated utterances evidencing only defendant's ill will toward his mother-in-law. On the contrary they were directly related to defendant's abuse of his wife. In a prosecution for homicide "[e]vidence of previous difficulties between the accused and a third person is admissible where properly connected with the victim and offense. . . . [E]vidence of

prior difficulties between accused and a third person is admissible to show malice, premeditation, or general state of mind, *as is evidence of accused's ill will toward a member of the family of deceased. . . .*" 40 C. J. S. *Homicide* § 209 (1944) (Emphasis added.)

**[5]** Assignments of error 10, 11, and 23-27 are based upon exceptions to the admission of properly identified photographs showing the body of the deceased and its location in the trailer. These photographs were offered and admitted to illustrate the testimony of the witnesses who saw the body before it was moved. At the time of the introduction of the pictures, and again in his charge, the judge carefully instructed the jury that the photographs were not substantive evidence, that they had been admitted solely for the purpose of illustrating the testimony. The competency of these photographs for that purpose is well established. *State v. Hill,* 272 N.C. 439, 158 S.E. 2d 329; *State v. Lentz,* 270 N.C. 122, 153 S.E. 2d 864; *State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10; *State v. Butler,* 269 N.C. 483, 153 S.E. 2d 70.

**[6]** Defendant argues strenuously that he is entitled to a new trial because the court failed to declare a mistrial on account of "the situation that occurred" during the direct examination of Mr. and Mrs. Clarence Bullock, witnesses for the State. This "situation" is the subject of assignments of error 31-35. The circumstances which created it were as follows:

When Bullock was asked if he had ever had a conversation with defendant with reference to what defendant would do if his wife ever left him, Bullock replied, "Nick had said he had killed one person. . . ." Defendant's counsel interrupted this statement with an objection which the court promptly sustained. In addition, the court instructed the jury to disregard the witness' answer and not to consider it for any purpose whatsoever. After instructing Bullock not to "go into that" the solicitor again asked him whether defendant had made any statement concerning his wife. Again Bullock replied, "He stated he had killed one person and he . . . ." Defendant's motion to strike was allowed, and Judge Fountain repeated his instruction that the jury disregard the witness' answer. He then explained the solicitor's question to the witness, telling him to answer that question and to say no more. Once again Bullock said, "He made the statement that he had killed one person . . . ." Judge Fountain immediately reinstructed the jury to disregard the statement, reminded Bullock that he had twice previously stricken that assertion from the record, and asked him if he understood the ruling. Bullock replied that he did. The solicitor then said: "Mr. Bullock,

don't reply and make any statement concerning any other person other than defendant and his wife, Joanne. Leave out any reference to anything else. Did the defendant, Samuel Nick Moore, make a statement to you concerning what he would do to his wife if she left him?" The witness answered YES. The next question, "What did he say?", for the fourth time brought the reply, "He said he had killed one person and . . . ."

For the fourth time Judge Fountain instructed the jury to disregard the witness' answer. He then told Bullock that disciplinary action would be required if he persisted in violating the court's ruling. Judge Fountain also informed the solicitor that, "if it happened again," he would require Bullock to leave the stand. Thereupon the solicitor asked Bullock if he could leave out the first part of any statement which defendant had made to him and report only what defendant said concerning his wife. The reply was, "I don't know how to explain it Sir." The matter was not pursued further with Bullock.

As the State's next and last witness, Mrs. Clarence Bullock, who had not been in the courtroom when her husband was testifying, was called to the stand. She testified that a day or two before Mrs. Moore's death she and her husband had had a conversation with defendant about his wife. Asked to repeat the conversation, she — as her husband had done — began with the statement, "He said that he had killed one person . . . ." The judge himself interrupted her and instructed the jury to disregard the statement completely and not to consider it for any purpose whatsoever. When the solicitor asked her if she could omit everything defendant had said about what he had done to anybody else and confine her testimony to what he had said about his wife, Mrs. Bullock's reply was, "I just know only what he said. I don't know how to put it unless I say it." She was not examined further.

In support of his contention that the prejudicial effect of the Bullocks' repetitive statement was not subject to correction, counsel for defendant cite *State v. Aycoth*, 270 N.C. 270, 154 S.E. 2d 59. Aycoth appealed from a conviction of armed robbery. At his trial, a deputy sheriff was asked if he knew who owned the automobile which was in the defendant's possession at the time of his arrest. The reply was that at the time the defendant had been arrested on another charge he had said it was his car. The officer then added, "His wife asked me to go search the car and see if I could find some article that was left in the car sitting in the yard *when he was indicted for murder.*" (Emphasis added.) Defendant's objection and

motion to strike were allowed, and the court instructed the jury not to consider what defendant's wife had said. Thereafter defendant moved for a mistrial, and this motion was denied. In awarding a new trial this Court said: "The unresponsive statement of Fowler informed the jury that Aycoth had been *indicted* for murder. . . . *Subsequent incidents* tend to emphasize rather than dispel the prejudicial effect of Fowler's testimony. . . . Being of the opinion the incompetent evidence to the effect Aycoth had been or was under indictment for murder was of such serious nature that its prejudicial effect was not erased by the court's quoted instruction, we are constrained to hold that Aycoth's motion for a mistrial should have been granted." *Id.* at 272-273, 154 S.E. 2d at 61. (Emphasis added.)

Material differences distinguish this case from Aycoth's. In the latter, the unresponsive statement was that the defendant had been *indicted* for murder. Here the statement was only that defendant had "killed one person." Was the killing accidental, in self-defense, or felonious? The statement contained no suggestion that the homicide was the result of a criminal act or that defendant had been prosecuted for it. Furthermore, no *subsequent events* tended to emphasize this inconclusive testimony that defendant "had killed one man." We do not, therefore, deem this evidence so inherently prejudicial that its initial impact — whatever it was — could not have been erased by the judge's prompt and emphatic instructions that the jury should not consider the testimony for any purpose whatsoever. As Devin, J. (later C.J.), said in *State v. Ray,* 212 N.C. 725, 729, 194 S.E. 482, 484, "[O]ur system for the administration of justice through trial by jury is based upon the assumption that the trial jurors are men of character and of sufficient intelligence to fully understand and comply with the instructions of the court, and are presumed to have done so. *Wilson v. Mfg. Co.,* 120 N.C. 94, 26 S.E. 629." *Accord, State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216; 2 Strong, N. C. Index 2d *Criminal Law* § 96 (1967).

[7, 8]   At his trial defendant was represented by competent counsel of his own choosing. They evidently thought that any prejudice to defendant from the Bullocks' statement had been removed by the action of the judge in striking their unsolicited statements and by his instructions to the jury to disregard them. Unlike defense counsel in *Aycoth,* defendant's attorneys made no motion for a mistrial. Defendant elected to proceed with the trial and to take his chances with the jury then impaneled. Under the circumstances here disclosed he may not successfully contend that the court, of its own

motion, should have declared a mistrial. *Allen v. Garibaldi,* 187 N.C. 798, 123 S.E. 66. Indeed, without defendant's consent or a motion by him, had the court declared a mistrial, *ex mero motu,* at the onset of the next trial the judge would most certainly have been confronted with defendant's plea of former jeopardy. Annot., 63 A. L. R. 2d 782, 791-793 (1959); 22 C. J. S. *Criminal Law* § 261 (1961). "It is only in cases of necessity in attaining the ends of justice that a mistrial may be ordered in a capital case without the consent of the accused." *State v. Harris,* 223 N.C. 697, 700, 28 S.E. 2d 232, 235; *accord, State v. Crocker,* 239 N.C. 446, 80 S.E. 2d 243; 3 Strong, N. C. Index 2d *Criminal Law* § 128 (1967).

A careful examination of the record and of all defendant's assignments of error, including those to the charge, discloses no reason to disturb the verdict. In the trial we find

No error.

MOORE, J. did not participate in the consideration or decision of this case.