An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-10

NORTH CAROLINA COURT OF APPEALS

Filed:  2 September 2014

STATE OF NORTH CAROLINA

v.

ERIC CORENZO MOODY

Cabarrus County
Nos. 09 CRS 53217; 10 CRS 902

On writ of *certiorari* to review judgment entered 6 January 2011 by Judge W. Erwin Spainhour in Cabarrus County Superior Court.  Heard in the Court of Appeals 7 May 2014.

*Attorney General Roy Cooper, by Assistant Attorney General Kimberly N. Callahan, for the State.*

*Marilyn G. Ozer, for defendant-appellant.*

CALABRIA, Judge.

We have granted Eric Corenzo Moody's ("defendant") petition for writ of *certiorari*  to review a judgment entered upon a jury verdict finding him guilty of possession of cocaine, possession of drug paraphernalia, and resisting, delaying, or obstructing a

public officer ("RDO"), that includes his plea of guilty to attaining the status of an habitual felon. We find no error.

## I. Background

On 26 September 2009, Officers Dustin Wilhoite ("Officer Wilhoite") and Justin Benson ("Officer Benson") of the Concord Police Department ("CPD") initiated a traffic stop of a vehicle with a broken taillight. Defendant was a passenger in the back seat of the vehicle. Officer Wilhoite approached the vehicle, requested the driver's license and registration, and asked her to step out of the vehicle. The driver complied and gave the officer consent to search the vehicle. Officer Wilhoite determined that the driver had an outstanding warrant for failure to appear and placed her under arrest.

While Officer Wilhoite was investigating the driver, Officer Benson approached the passenger side of the vehicle to speak with defendant and another passenger. He then requested and received both passengers' identifications. Officer Benson determined that neither passenger had any outstanding warrants. However, for safety reasons, he asked both passengers to exit the vehicle and also asked if they had any weapons. Defendant told Officer Benson that he had a knife and reached into his pocket to retrieve it. Officer Benson grabbed defendant's wrist to prevent him from taking the knife out of his pocket.

Defendant then attempted to flee the scene. CPD Officer Paul Kluttz ("Officer Kluttz"), who had recently arrived to assist the other officers, pursued defendant along with Officer Benson. Shortly thereafter, defendant tripped and was apprehended by Officer Kluttz. Officer Benson searched defendant and found a pocket knife, a baggie containing three crack rocks, and a crack pipe in his pockets.

Defendant was arrested and indicted for felony possession of cocaine, possession of drug paraphernalia, and misdemeanor resisting a public officer. Later, he was indicted for attaining the status of an habitual felon. Beginning 3 January 2011, defendant was tried by a jury in Cabarrus County Superior Court. At trial, defendant testified on his own behalf. Defendant claimed that the pants he was wearing at the time of his arrest belonged to his brother. Defendant asserted that he did not know that the pants contained crack cocaine or drug paraphernalia. He explained that he was a drug addict and that he would have immediately used the drugs if he knew they existed.

During cross-examination, the State asked defendant whether he knew that his brother had been in jail on pending murder charges since 29 November 2008. The court intervened *sua sponte*, sustained an objection to the question and ordered defendant's response to the question to be stricken. The State

continued its line of questioning to emphasize that defendant's brother did not have access to the pants after 29 November 2008, but did not mention the pending murder charges again.

On 6 January 2011, the jury returned a verdict finding defendant guilty of the offenses of felony possession of cocaine, possession of drug paraphernalia, and resisting a public officer. After the verdict, defendant pled guilty to attaining the status of an habitual felon. The trial court sentenced defendant to a minimum of 90 and a maximum of 117 months in the North Carolina Department of Correction. On 30 May 2013, defendant filed a petition for writ of *certiorari* with this Court to review the trial court's judgment. The petition was granted on 13 June 2013.

## II. Evidence of Murder Charge

Defendant argues that the trial court erred by failing to issue a sufficient curative instruction to the jury after the State improperly questioned defendant regarding his brother's incarceration due to pending murder charges. We disagree.

The law presumes that jurors will follow the court's instructions. *State v. Tirado*, 358 N.C. 551, 581, 599 S.E.2d 515, 535 (2004). Thus, "[i]t is well-settled that where the trial court withdraws incompetent evidence and instructs the jury not to consider that evidence, any prejudice is ordinarily

cured." *State v. Davis*, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998).

In the instant case, defendant testified that he shared clothes with his brother and that on the night of his arrest, he grabbed a pair of pants from the closet that ultimately belonged to that brother. Defendant claimed that because he did not own the pants, he was not aware that there were drugs in the pocket. In order to rebut defendant's claims, the State attempted to introduce evidence that defendant's brother had no access to the pants for almost a year prior to defendant's arrest because he was incarcerated due to pending murder charges.

> [The State]: Now, you know that your brother, Ernest Lamont Moody, has been locked up in the back here on murder charges since November 29th of 2008.
>
> [Defendant]: Correct.
>
> The Court: Objection sustained; objection sustained. Strike that Ladies and Gentlemen.

Defendant first contends that the State's question was so grossly prejudicial that it could not be cured, even by an appropriate curative instruction. *See State v. Sanderson*, 336 N.C. 1, 19, 442 S.E.2d 33, 43 (1994). Defendant cites *Sanderson* and *State v. Aycoth*, 270 N.C. 270, 273, 154 S.E.2d 59, 61 (1967), in support of his argument. However, both *Sanderson* and *Aycoth* are distinguishable from the instant case.

In *Sanderson*, the prosecutor twice insinuated that the defendant had been investigated in another murder. 336 N.C. at 17, 442 S.E.2d at 42-43. The trial court sustained objections to the prosecutor's statements and gave the jury curative instructions. *Id*. Our Supreme Court found the curative instructions to be insufficient, reasoning that "[t]he jury being left with a plausible suggestion that defendant had committed at least one other murder and a mild instruction from the judge not to consider it as such, it may well have accepted the prosecutor's suggestion and been influenced by it in its sentencing determination." *Id*. at 18, 442 S.E.2d at 43.

In *Aycoth,* a witness mentioned during his testimony that the defendant had previously been indicted for murder. 270 N.C. at 272, 154 S.E.2d at 60. The trial court sustained defense counsel's objection, granted a motion to strike, and instructed the jury not to consider the evidence. *Id*. Our Supreme Court held that "the court's instruction did not remove from the minds of the jurors the prejudicial effect of the knowledge they had acquired . . . that Aycoth had been or was under indictment for murder," and ordered a new trial. *Id*. at 273, 154 S.E.2d at 61.

The instant case is materially different from *Sanderson* and *Aycoth*. Those cases concern the prejudicial effect of inadmissible evidence of other charges against *the defendant who is on trial*. In this case, evidence that defendant's brother was

charged with murder simply does not create the same type of prejudice. The fact that defendant's brother had other pending charges does not suggest that defendant was more likely to have committed the current offenses. This argument is overruled.

Defendant next argues that if a curative instruction was appropriate, the trial court was required to give a more definitive curative instruction than "strike that." In support of this argument, defendant notes that in previous cases, this Court "has approved language that tells the jury in 'firm and unequivocal terms' to disregard the inadmissible testimony." *State v. Hamilton*, 53 N.C. App. 740, 745, 281 S.E.2d 680, 684 (1981). However, defendant fails to adequately explain why the trial court's admonition to the jury to disregard the State's question and defendant's answer immediately after the question was asked and answered was not sufficiently firm and unequivocal. The trial court had previously instructed the jury that "[i]f the Court grants a motion to strike all or part of the answer of a witness to a question, you must disregard and not consider that evidence which has been ordered stricken." [T p 36] Thus, the jury clearly would have understood that when the trial court ordered the State's improper question and defendant's answer to be stricken, they were to disregard the question and answer and "any prejudice [was] . . . cured." *Davis*, 130 N.C. App. at 679, 505 S.E.2d at 141. Since the trial

court's instruction to the jury cured any prejudice from the State's question, there was no error, plain or otherwise, in the court's handling of the improper question. This argument is overruled.

### III. Motion to Suppress

Defendant argues that the trial court erred by denying his motion to suppress evidence seized as a result of an unlawful extension of the traffic stop. We disagree.

A motion to suppress evidence is the "exclusive method of challenging the admissibility of evidence upon grounds specified in N.C. Gen. Stat. § 15A-974." N.C. Gen. Stat. § 15A-979 (2013). A motion to suppress must be made prior to trial unless the defendant did not have a reasonable opportunity to make the motion pretrial or a specific exception applies that allows the defendant to make the motion during the trial. N.C. Gen. Stat. § 15A-975 (2013). "A defendant's failure to comply with the requirements of the statute acts as a waiver of his right to suppress evidence in violation of statutory or constitutional law." *State v. Byers*, 105 N.C. App. 377, 381, 413 S.E.2d 586, 588 (1992) (citing *State v. Holloway*, 311 N.C. 573, 319 S.E.2d 261 (1984)).

In the instant case, defendant failed to file a written pretrial motion to suppress the evidence. Instead, midway through the trial, defense counsel made an oral motion to

suppress. The trial court overruled the motion and said that defendant waived his objection by failing to follow proper procedure. Defendant failed to argue that any of the exceptions in § 15A-975 applied in this case excusing a pretrial motion. Defendant's only argument was that the evidence should be suppressed "in the interests of justice." Since defendant failed to comply with the procedural requirements of a motion to suppress, the trial court did not err in denying his motion.

Nonetheless, defendant asserts that the admission of the evidence constituted plain error. Plain error is an error "'so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]'" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

This Court has held that "[w]hen there are reasonable grounds to order an occupant out of the car, then he may be subjected to a limited search for weapons when the facts available to the officer justify the belief that such an action is appropriate." *State v. Adkerson*, 90 N.C. App. 333, 338, 368

S.E.2d 434, 437 (1988). In *Adkerson*, this Court held that a limited search of a passenger was justified due to the fact that it was late, in a rural area, and the officer's position was vulnerable. *Id*. at 339, 368 S.E.2d at 437.

In the instant case, Officers Wilhoite and Benson testified that the traffic stop took place at approximately 1:00 a.m. in a high-crime area where it was "relatively dark." At that time, there were three individuals in the vehicle but only two officers were present at the beginning of the stop. Under these circumstances, Officer Benson was justified ordering defendant to exit the vehicle and conducting a limited search for weapons. *See id*. Defendant then admitted to Officer Benson that he had a knife, further justifying a search of his person. Defendant has failed to meet his burden of demonstrating plain error. This argument is overruled.

## IV. Conclusion

The trial court's instruction to the jury to disregard the State's question regarding defendant's brother's pending murder charge was sufficient to cure any prejudice that resulted from that question. Defendant failed to comply with the statutory requirements for filing a pretrial motion to suppress or for making a motion to suppress during the trial. In addition, defendant did not meet his burden of showing that the admission

of evidence obtained from the extended traffic stop was plain error.  Defendant received a fair trial, free from error.

No error.

Judges BRYANT and GEER concur.

Report per Rule 30(e).