IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-2

Filed 31 December 2024

Cherokee County, No. 16 CRS 50731

STATE OF NORTH CAROLINA

v.

BRIAN CRISP, Defendant.

Appeal by defendant from judgment entered 15 February 2023 by Judge Steve R. Warren in Cherokee County Superior Court. Heard in the Court of Appeals 29 October 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Kristin J. Uicker, for the State.*

*Law Office of Lisa Miles, by Lisa Miles, for defendant-appellant.*

DILLON, Chief Judge.

In this case, we consider a criminal defendant's right to a speedy trial and the introduction of potentially prejudicial evidence to a jury.

## I. Background

Defendant Brian Crisp was arrested on 10 May 2016 and charged with first-degree murder of Kenneth "Ryan" Jones. Defendant's trial began almost seven years later, on 30 January 2023. It was uncontested that Defendant shot Ryan. The only issue at trial was whether the shooting was intentional or accidental. The jury found

Defendant guilty of second-degree murder.  Defendant timely appealed.

## II.    Analysis

Defendant presents two issues on appeal, which we address in turn.

### A.  Right to Speedy Trial

Before his 2023 trial began, Defendant moved to dismiss on speedy trial grounds, which the trial court denied.  Defendant argues this was error.

We review the order to determine if competent evidence supports the trial court's findings and if those findings support its conclusions of law.  *See State v. Cooke*, 306 N.C. 132, 134 (1982).  Uncontested findings are binding on appeal.  *See State v. Cobb*, 381 N.C. 161, 165 (2022).  "The denial of a motion to dismiss on speedy trial grounds presents a constitutional question of law [the ultimate conclusion of law] subject to de novo review."  *State v. Farook*, 381 N.C. 170, 178 (2022).

Criminal defendants are guaranteed the right to a speedy trial under both the Sixth Amendment of the Constitution of the United States (applicable to the states through the Fourteenth Amendment) and Article I, Section 18 of the North Carolina Constitution.  *See* U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"); U.S. Const. Amend. XIV; N.C. Const. art. I, § 18 ("[J]ustice shall be administered without favor, denial, or delay.").

A delay exceeding one year generally "signal[s] the point at which courts deem the delay unreasonable enough to trigger the *Barker* calculus," wherein we analyze factors to determine whether a defendant's right to a speedy trial has been violated.

*Farook*, 381 N.C. at 178–79 (referencing the federal speedy trial analysis devised by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972)). Here, the post-accusation delay (May 2016 to January 2023) was approximately six-and-a-half years, thus triggering the *Barker* analysis.

Under the *Barker* analysis, we weigh the following four factors: (1) length of the delay, (2) reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant. *See Barker*, 407 U.S. at 530. *See also State v. Grooms*, 353 N.C. 50, 62 (2000) (recognizing that we employ the *Barker* analysis in reviewing speedy trial motions under the North Carolina constitution). None of the four *Barker* factors are "either a necessary or sufficient condition" to finding whether a defendant was deprived of his right to a speedy trial. Rather, we "engage in a difficult and sensitive balancing process" of weighing these factors and other relevant circumstances. *Barker*, 407 U.S. at 533. We examine each factor below.

*1. Length of Time*

First, we address the length of time between Defendant's arrest and trial. While the length of time triggers the *Barker* analysis, it is also an independent factor to be considered in the analysis. *See Barker*, 407 U.S. at 533; *Farook*, 381 N.C. at 178. But "mere length of delay, standing alone, does not establish that the delay was unreasonable or prejudicial[.]" *State v. Groves*, 324 N.C. 360, 366 (1989). We note other cases where our Court concluded a defendant's speedy trial right was not violated, despite a lengthy delay. *See State v. Spinks*, 277 N.C. App. 554, 563 (2021)

(approximately seven-year delay); *State v. Carvahlo*, 243 N.C. App. 394, 400 (2015) (nearly nine-year delay).

Here, the delay was long, being almost seven years. But this delay does not *per se* mandate a determination concluding Defendant's right to a speedy trial was violated.

### 2. *Reasons for Delay*

Next, we consider the reasons for the trial's delay. "[The] defendant has the burden of showing that the delay was caused by the *neglect* or *willfulness* of the prosecution." *State v. Spivey*, 357 N.C. 114, 119 (2003). A delay approaching one year "is generally recognized as long enough to 'create a prima facie showing that the delay was caused by the negligence of the prosecutor' . . . sufficient to shift the burden of proof to the State 'to rebut and offer explanations for the delay.' " *Farook*, 381 N.C. at 179 (quoting *State v. Wilkerson*, 257 N.C. App. 927, 930 (2018)). Here, the length of the delay creates a *prima facie* showing the delay was caused by the prosecution's negligence, thus shifting the burden of proof onto the State to explain the delay.

"[D]ifferent weights should be assigned to different reasons." *Barker*, 407 U.S. at 531.

> [D]eliberate delay is weighted heavily against the State. . . . A more neutral reason such as negligent delay or a valid administrative reason such as the complexity of the case or a congested court docket is weighted less heavily against the State than is a deliberate delay. . . . A valid reason for delay, such as delay caused by difficulty in locating witnesses, serves to justify appropriate delay.

> Finally, delays occasioned by acts of the defendant or on his or her behalf are heavily counted against the defendant and will generally defeat his or her speedy trial claim.

*Farook*, 381 N.C. at 180 (cleaned up).

Based on the trial court's unchallenged findings and the findings supported by competent evidence, we divide this case's history into four distinct periods.

### a. *Period 1: May 2016 to March 2019*

Defendant was arrested in May 2016. From May 2016 to June 2017, Defendant was represented and incurred multiple changes in counsel. Defendant was presumably not ready to go to trial until at least 5 March 2019, when defense counsel e-mailed the prosecution and requested to set a trial date. Defendant also did not file notice of his affirmative defenses (self-defense and accident) until March 2019, further suggesting he was not prepared for trial until this time.

This period of the delay can be attributed to Defendant's change in counsel and preparation for trial, which weighs against Defendant's speedy trial claim. *See State v. Johnson*, 275 N.C. 264, 269 (1969) ("A defendant who has himself caused the delay, or acquiesced in it, will not be allowed to convert the guarantee, designed for his protection, into a vehicle in which to escape justice.").

### b. *Period 2: March 2019 to March 2020*

In late March 2019, defense counsel discovered the State never sent certain evidence to the lab for testing. Defense counsel notified the State *via* e-mail on 2 April 2019 that the evidence had not been tested. The State delivered the evidence

to the lab the next day. And the State submitted a rush request on 1 May 2019.

Defendant's case was first calendared for trial in July 2019. But his case was only placed on the alphabetical trial calendar. Multiple dates were unavailable for trial due to the assigned Assistant District Attorney's ("ADA") trial schedule: the ADA was trying a first-degree murder case in Swain County (2014 indictment date) from 5 August 2019 to 16 September 2019; the ADA married and went on his honeymoon from 20 September 2019 to 25 September 2019; and the ADA was ordered to active military duty from 8 October 2019 to 11 October 2019. And defense counsel was unavailable for trial from 29 July 2019 to 9 August 2019.

Defendant's trial was scheduled to begin 12 November 2019. However, defense counsel moved for a continuance because he had received a voluminous amount of discovery days before the trial's scheduled start date. A portion of the discovery had been in the possession of various Tennessee law enforcement agencies. The ADA met with Tennessee law enforcement personnel to acquire discovery materials before Defendant's trial, and the ADA turned over those materials to Defendant as soon as they were available to him the week before the scheduled trial in November 2019.

This portion of the delay can be attributed to both Defendant and the State. The State's delay in sending the evidence to the lab and the ADA's scheduling limitations/the district's congested court docket weigh against the State—though less heavily than a deliberate delay. But while the State may have been neglectful in failing to send evidence for testing, that neglect resulted in only a portion of the delay.

Moreover, the State took immediately steps to rectify this, quickly delivering the evidence to the lab and filing a rush request. The State scheduled the trial for November 2019—approximately seven months after Defendant first requested a trial date. Notably, a significant portion of this part of the delay was due to Defendant's decision to move to continue the trial until a later date, which weighs heavily against Defendant's speedy trial claim.

### c. Period 3: March 2020 to March 2021

Defendant's case was continued to the May 2020 calendar. However, from March 2020 to March 2021, Cherokee County Superior Court was effectively shut down due to the COVID-19 pandemic. Both parties agree this one-year period of delay was fully justified. *See, e.g.*, *State v. Smith*, 1 N.C. 1 (1778) ("no [court] business was done" during a scheduled term of court due to "the smallpox raging then in New Bern").

### d. Period 4: March 2021 to January 2023

Beginning in March 2021, the District Attorney and the ADAs of the 43rd prosecutorial district traveled the district to address the felony backlog caused by the COVID-19 shutdown. The prosecution focused on holding trials "more conducive" to be tried with the remaining COVID-19 restrictions. For example, school gyms were used as alternative venues for trials to allow for required distancing and spacing. There was a "genuine concern" cases would end in mistrial if individuals involved in the trial (including jurors) caught COVID-19. Accordingly, the prosecution "was

hesitant to calendar major cases such as homicides because of the risk of mistrial."

However, Cherokee County held at least ten sessions of superior court from the court's re-opening in March 2021 to Defendant's trial in January 2023. Only one matter tried during that period was older than Defendant's case, a case indicted in 2014. All other trial calendars listed matters with indictment dates between 2017 and 2021, whereas Defendant's indictment date was in 2016.

Defendant was placed second on the trial calendar for 10 May 2022. He was placed behind a defendant with a 2019 indictment date. However, that defendant had filed a speedy trial motion, whereas Defendant had not.

Defendant's case was placed on the 2 August 2022 trial calendar, but the ADA and defense counsel agreed Defendant's case could not be tried at that time because the ADA and defense counsel were both preparing for a capital murder trial scheduled later that month. Defendant's case was placed first on the 30 January 2023 trial calendar.

Like the delay in Period 2, this portion of the delay can be attributed to both Defendant and the State. The State was coping with valid administrative complications caused by the courts' yearlong shutdown (notably, a very congested case docket) and fears about potential mistrials, which weighs less heavily against the State than a deliberate delay. Additionally, the State decided to calendar other cases before Defendant's, even though Defendant's case had been indicted first. However, the State has prosecutorial discretion in deciding the order in which to try

cases. *See, e.g., Spivey*, 357 N.C. at 120−21. This is especially important to consider where the State may have felt it was necessary to schedule other trials first, even though Defendant was indicted later, because other defendants had asserted their right to a speedy trial. Moreover, Defendant (through his counsel) acquiesced in part of the delay, where defense counsel agreed Defendant could not be tried due to another scheduled trial. *See Vermont v. Brillon*, 556 U.S. 81, 91 (2009) ("[D]elay caused by the defendant's counsel is also charged against the defendant.").

### 3. Prejudice

We next address the prejudice factor. Our Supreme Court has instructed as follows with respect to this factor:

> To assess whether the defendant has suffered prejudice from the delay in bringing his case to trial, courts should analyze three interests identified by the *Barker* Court that are affected by an unreasonable delay: (1) oppressive pretrial incarceration; (2) the social, financial, and emotional strain and anxiety to the accused of living under a cloud of suspicion; and (3) impairment of the ability to mount a defense to the charges pending against the defendant.

*Farook*, 381 N.C. at 189. The third interest—whether the delay impaired the defendant's ability to mount his defense—is the most serious component of the prejudice factor. *Barker*, 407 U.S. at 532.

"[A] criminal defendant may establish prejudice for purposes of his speedy trial claim through proof of either actual prejudice or presumptive prejudice." *Farook*, 381

N.C. at 190 (citing *Doggett v. United States*, 505 U.S. 647, 655 (1992)).[1] Defendant argues he was prejudiced in multiple ways.

Regarding the first interest (oppressive pre-trial incarceration), Defendant disputes the trial court's finding that Defendant's pre-trial incarceration was not oppressive. We conclude the trial court's finding and all other findings discussed below on the "prejudice" factor are supported by competent evidence.

Regarding the second interest (social, financial, and emotional strain and anxiety), Defendant presented evidence concerning his anxiety, and the trial court found that it

> does not . . . believe the defendant has suffered anxiety and concern above what would ordinarily be the baseline level of such conditions of anyone charged with a murder. In this regard, the Court finds nowhere in the medical records where the defendant ever complained of nor received treatment for anxiety or any other disorder associated with anxiety.

Defendant disputes this finding, asserting a medical diagnosis is not required to show Defendant had suffered anxiety. However, the trial court did not state that a medical diagnosis is required—it merely used the lack of a diagnosis as one piece of evidence in determining Defendant did not suffer from abnormal anxiety. Defendant further

---

[1] In its order, the trial court cited to previous cases by our Supreme Court which required a defendant to show "actual, substantial prejudice" caused by the trial's delay. *See Spivey*, 357 N.C. at 122; *Farmer*, 376 N.C. at 412. However, our Supreme Court in a more recent case (*Farook*) held that a defendant can show actual prejudice *or presumptive prejudice*. *Farook*, 381 N.C. at 190. Accordingly, we analyze Defendant's argument in this case under the more lenient standard stated in *Farook*. *See id.* Even when analyzed under the more lenient standard, we agree with the trial court's conclusion that Defendant was not prejudiced by the delay.

asserts the trial court failed to acknowledge Defendant's other health issues experienced during the delay, including a hiatal hernia, weight gain, and changes in speech patterns. However, we accord "great deference" to the trial court's findings of fact because the trial court has the ability to view and hear witnesses' testimony, weigh the evidence presented, and resolve conflicts in the evidence. *See State v. Williams*, 366 N.C. 110, 114 (2012).

Regarding the final and most important interest (ability to mount a defense), Defendant has not shown his defense was impaired by the delay. Regarding the evidence that was not available until November 2019, the trial court found "there was no showing that the results of those tests would have been any different had they been tested on the day of the alleged murder on May 10, 2016" and "[t]he seizures in Tennessee [evidence from law enforcement pertaining to Defendant's arrest] were ultimately fully examined by the State lab and processed without any suggestion that the results would not have been exactly the same had they been processed the day of the murder." Regarding the lay witnesses who testified at trial, the trial court found "the length of time awaiting trial, if anything, has benefitted the Defendant regarding the memories of these lay witnesses." The primary question at trial was Defendant's *mens rea* when he shot the victim, and no evidence tends to show Defendant was precluded from presenting evidence at trial about his *mens rea* on the day of the crime.

Accordingly, the trial court's findings do not show that Defendant suffered

actual or presumptive prejudice due to the delay.

### *4. Assertion of Right to Speedy Trial*

Third, we address whether Defendant asserted his right to a speedy trial.

> The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Barker*, 407 U.S. at 531–32.

It is more difficult for a defendant to show a speedy trial violation when the case goes to trial soon after the filing of a formal speedy trial motion. *See State v. Farmer*, 376 N.C. 407, 417 (2020). In *Farmer*, our Supreme Court held that the defendant's failure to assert his speedy trial right weighed more heavily against him because his case went to trial only four months and eleven days after he had filed his formal speedy trial motion. *See id.*

Here, Defendant's case went to trial only one month and twelve days after Defendant filed his speedy trial motion. Moreover, Defendant's case was already scheduled for trial to start the next month when he filed his motion. Accordingly, this weighs heavily against Defendant.

Defendant argues he *informally* moved for dismissal based on speedy trial grounds before filing his formal motion in December 2022. Defendant cites *State v. Washington*, 192 N.C. App. 277 (2008), in support of this argument. In *Washington*,

the defendant did not formally assert a motion for dismissal based on speedy trial grounds until three years after his arrest. *See id.* at 290. However, our Court found the defendant had *informally* asserted his right when he repeatedly moved to expedite SBI testing of evidence, beginning just a few months after his arrest. *See id.* at 291.

In this case, Defendant argues he informally asserted his right through (1) a request for the production of discovery/motion to compel filed on 18 September 2017 and a motion to compel discovery production filed on 21 September 2018; (2) his demand that evidence be sent for testing after learning that evidence had not been sent to the lab; and (3) his request to set a trial date. *Washington* is distinguishable from Defendant's case.

Motions to compel discovery and requests to set a trial date are standard procedures in criminal cases. As such, we do not view them as informal assertions of Defendant's right to a speedy trial. And regarding Defendant's demand for the evidence to be tested, defense counsel merely e-mailed the prosecutor to inform him the evidence had not been sent to the lab. In contrast, the defendant in *Washington* twice filed with the trial court a formal motion to compel SBI testing, and the trial court then ordered the testing. *See id.* at 280. Defendant's e-mail is not on par with formal motions to compel testing; thus, we do not consider Defendant's e-mail demand for evidence testing as an informal assertion of his speedy trial right.

*5. Balancing of the* Barker *Factors*

After balancing the four *Barker* factors set forth above, we conclude that Defendant's speedy trial right was not violated to warrant dismissal of the murder charge against Defendant. While the six-and-a-half-year delay was notably long and a portion of the delay can be attributed to the State, these factors are counterbalanced by Defendant's failure to show that his defense was impaired by the delay, his failure to assert his speedy trial right until approximately one month before the trial was scheduled to start, and his contribution to the delay. Accordingly, the trial court did not err in denying Defendant's motion to dismiss on speedy trial grounds.

## B. Prejudicial Evidence

The second issue presented is whether the trial court erred in denying Defendant's motion for mistrial due to an allegedly prejudicial photograph which the State was allowed to offer into evidence. The photograph which Defendant claims was prejudicial depicted blood-stained areas around the same home where the murder occurred in this case. The photograph, however, was from an unrelated event which occurred years before in 2007. Defendant claims the photograph was unfairly prejudicial to him because, from it, the jury could form a belief that Defendant had committed another violent act. Defendant further claims the curative instruction provided to the jury was insufficient.

This Court reviews a trial court's denial of a motion for mistrial under an abuse of discretion standard. *State v. Simmons*, 191 N.C. App. 224, 227 (2008). The trial court "may declare a mistrial at any time during the trial," but the court "must declare

a mistrial upon the defendant's motion if there occurs during the trial an error . . . resulting in substantial and irreparable prejudice to the defendant's case." N.C.G.S. § 15A-1061 (2023). "[T]he decision as to whether substantial and irreparable prejudice has occurred lies within the sound discretion of the trial judge and that his decision will not be disturbed on appeal absent a showing of abuse of discretion." *State v. Williamson*, 333 N.C. 128, 138 (1992) (citation omitted). To declare a mistrial, two things must be shown: (1) the evidence provided at trial was prejudicial *and* (2) the prejudicial evidence could not be cured by a curative instruction. *See State v. McDougald*, 279 N.C. App. 25, 28 (2021).

### 1. *Prejudicial Nature of Photograph*

In determining the prejudicial effect of evidence, our Court looks at "the nature of the evidence and its probable influence upon the minds of the jury in reaching a verdict." *State v. Aycoth*, 270 N.C. 270, 272 (1967). " 'Unfair prejudice,' as used in Rule 403, means 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one.' " *State v. DeLeonardo,* 315 N.C. 762, 772 (1986) (quoting N.C.G.S. § 8C–1, Rule 403 commentary (Supp.1985)).

Here, Defendant contends the photograph was prejudicial because it indicated other bloody incidents occurred at Defendant's residence in addition to this event. On appeal, Defendant argues that this case is analogous to *Aycoth*. We disagree.

In *Aycoth*, our Supreme Court reversed the denial of the motion for mistrial and held it is prejudicial for the State to offer evidence "tending to show that the

accused has committed another distinct, independent, or separate offense." 270 N.C. at 272 (citation omitted). There was explicit testimony which was intentionally used to prejudice the defendant by claiming he had been indicted for murder. That is not the case in the case *sub judice*.

The present case is more analogous to the facts in *State v. Moore*, 276 N.C. 142 (1970). In *Moore*, a witness testified that the defendant had previously killed someone. *Id.* at 149. However, our Supreme Court held his testimony was not prejudicial because it did not suggest he was arrested, tried, or convicted of committing a previous crime. *Id.* Similarly, here, a photograph may have suggested a previous "bloody" incident had occurred at Defendant's residence, but the photograph did not suggest Defendant had previously been arrested, tried, or convicted of a previous crime, or even that Defendant had previously committed a violent act. Therefore, Defendant was not prejudiced by the photograph.

### 2. *Curative Nature of Jury Instruction*

Notwithstanding our holding regarding the non-prejudicial nature of the photograph, we address the trial court's curative instruction to the jury. When the trial court withdraws incompetent evidence and instructs the jury not to consider it, any prejudice is ordinarily cured." *State v. Black*, 328 N.C. 191, 200 (1991). There is a long-standing presumption that jurors are capable of understanding and complying with instructions. "[O]ur system for the administration of justice through trial by jury is based upon the assumption that the trial jurors are men of character and of

sufficient intelligence to fully understand and comply with the instructions of the court, and are presumed to have done so." *State v. Self*, 280 N.C. 665, 672 (1972) (internal citations and quotations omitted).

In the case before us, a witness for the State was asked on cross-examination about "red smears" in various places around the home. On redirect, the prosecutor published a photograph to the jury and asked the witness to speak on his opinion about the blood smears at the location. After the photograph was published, the State, on its own initiative, explained to the court that the photograph did not pertain to the incident being tried and struck the exhibit from the record. The trial court provided the jury with the following curative instruction:

> Ladies and Gentlemen, I instruct you that through inadvertence the photographs that were referred to, including the photograph which was . . . admitted into evidence in this case were not, I repeat not, photographs which in any way related to the events of May 10, 2016. Through inadvertence they were both referred to, and one of those photographs, 5031, was introduced into evidence.
>
> The testimonial responses to the line of questioning regarding the appearance of blood stains on the deck stairs leading to the porch, the stains on the walk, the stains on the driveway and other areas are hereby stricken from the record in this case. The photograph, 5031, is hereby stricken from the record in this case.
>
> [You are] not, I repeat not, to consider the responses to those questions or the photographs in this case. [You are] not, I repeat not, to consider those questions or the photographs or the photograph that was introduced into evidence in your deliberations in this case. You are to completely and utterly disregard this evidence. You are to

follow these instructions to the letter. The trial court then asked all jurors if they could comply with the instruction, and all jurors agreed they could comply.

Defendant contends that the curative instruction was insufficient and may have "made things worse," arguing that the jury would likely have acquitted Defendant had the photograph of another bloody incident which occurred in the same residence not been published. We disagree.

Defendant has not provided anything in the record tending to show the jury was incapable of disregarding the photograph or the testimony pertaining to it. We hold the court's curative instruction was sufficiently clear and cured the jury from any purported prejudice the photograph may have caused. Additionally, "we must respect the presumption the jurors both understood and complied with those instructions[,]" unless we are provided with portions of the record to rebut the presumption. *McDougald*, 279 N.C. App. at 30.

## III.   Conclusion

We conclude that Defendant received a fair trial, free of reversible error.

NO ERROR.

Judges TYSON and MURPHY concur.